**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCATION as successor (Wells Fargo Bank, NA), as Trustee (Registered Holders of Citigroup Commercial Mortgage Trust 2007-C6, Commercial Mortgage Pass-Through Certificates, Series 2007-C6), acting by and through Special Servicer CWCapital Asset Management LLC,<br><br>          Plaintiff,<br><br>    v.<br><br>BANK OF AMERICA, N.A.,<br><br>          Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Case No. 1:14-cv-01492-TWP-DKL<br>)<br>)<br>)<br>)<br>) |

**ENTRY GRANTING MOTION TO TRANSFER VENUE**

This matter is before the Court on Defendant Bank of America, N.A.'s ("Bank of America"), Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue, or in the Alternative, Motion to Transfer to the Southern District of New York (Filing No. 23). On September 12, 2014, Plaintiff, U.S. Bank, N.A. ("U.S. Bank") filed a Complaint alleging breach of contract requesting both specific performance and damages. Bank of America contends that this Court lacks general and specific personal jurisdiction, warranting dismissal or transfer of this case to the Southern District of New York. For the reasons stated below, the Court finds transfer of this case to the Southern District of New York to be appropriate. Accordingly, the Court grants the motion to transfer and denies as moot the motion to dismiss.

**I. BACKGROUND**

In December 1999, the Women's Physicians Group, LLP ("Women's Physicians Group") purchased a two-story commercial building from Galen Hospital Corporation, Inc., located at 8081

Township Line Road, Indianapolis, Indiana 46237 (the "Property"), for $3,512,500.00. St. Vincent Hospital is the successor in interest to Galen Hospital Corporation, Inc., and the Property sits on the St. Vincent Hospital campus in Indianapolis. In connection with the acquisition of the Property, the Women's Physician Group executed a Special Warranty Deed (the "Deed") which contained title exceptions that run with the Property. In particular, Paragraph 1 of the Deed contains a use restriction that provides, in relevant part, as follows,

> The Property/Real Estate may be used and occupied only for an ambulatory surgery center and medical offices for the private practice of medicine and for no other purposes without the prior written consent of "Hospital" (as defined below), which consent may be withheld in Hospital's sole discretion. . . .

In addition, Paragraph 3 of the Deed contains a right of first refusal that provides, in relevant part, as follows,

> If the owner of the Property/Real Estate . . . shall receive a bona fide offer from any third party for the purchase, acquisition or lease (for a term of more than fifteen (15) years) of the Property/Real Estate or any part thereof or interest therein, which offer the Owner desires to accept, or if Owner desires to sell or transfer or make a bona fide offer to sell, transfer or assign the Property/Real Estate or any part thereof or interest therein to a third party, Owner shall promptly deliver to Galen Hospital Corporation, Inc. . . . a written notice setting forth the full terms and conditions of the proposed transaction, . . . Grantor may, within 30 days after receipt of such notice, elect to purchase, acquire or lease the Property/Real Estate or such portion thereof or interest therein which is subject to any offer as described above . . . on the same terms and conditions as those set forth in such notice.

Both the use restriction and the right of first refusal run with the land and are intended to be governed, construed, and enforced in accordance with Indiana law.

On April 30, 2007, LaSalle Bank National Association ("LaSalle") made a $9,000,000.00 commercial mortgage loan (the "Loan") to the Women's Physicians Group and secured the Loan with a mortgage (the "Mortgage") on the Property. The Mortgage contemplated that the Loan would be sold and securitized. On May 3, 2007, the Mortgage was recorded in the land records of Marion County, Indiana.

2

On July 25, 2007, LaSalle sold approximately 100 commercial mortgage loans to depositor Citigroup Commercial Mortgage Securities, Inc. ("Citigroup"), pursuant to a Mortgage Loan Purchase Agreement ("MLPA"). One of the loans that LaSalle sold to Citigroup was the $9 million Loan made to the Women's Physicians Group. Pursuant to the MLPA, LaSalle made representations and warranties regarding the Loan to Citigroup, including Representation No. 8, which states, in relevant part, as follows,

> Each related Mortgage is a valid and enforceable first lien on the related Mortgaged Property subject only to . . . the following title exceptions . . . (b) covenants, conditions and restrictions, rights of way, easements and other matters of public record, none of which, individually or in the aggregate, materially and adversely interferes with the current use of the Mortgaged Property or the security intended to be provided by such Mortgage or with the Mortgagor's ability to pay its obligations under the Mortgage Loan when they become due or materially and adversely affects the value of the Mortgaged Property.

Citigroup pooled the loans it purchased from LaSalle with loans that it purchased from other sponsors, and transferred the entire pool of loans to a trust (the "Trust"), pursuant to a Pooling and Servicing Agreement ("PSA"). In all, the Trust involved 318 loans for approximately 500 properties across 44 different states, totaling approximately $4 billion. Under the terms of the PSA, Citigroup assigned all of its rights under the MLPA to the Trustee of the Trust.

The MLPA and the PSA were negotiated, drafted, entered into, underwritten, and rated in New York; and the parties agreed that New York law would govern both agreements. No negotiations took place in Indiana; and no party, to either the MLPA or the PSA, was from Indiana. Initially, Wells Fargo Bank, N.A. served as Trustee of the Trust. Thereafter, U.S. Bank, an Ohio-based bank, became Trustee of the Trust. On October 17, 2008, Bank of America, a North Carolina-based bank, became successor-by-merger to LaSalle.

The Women's Physician Surgery Center, LLC ("Surgery Center") was the Property's major tenant and occupied the first floor, or approximately 55% of the available space. However,

3

in April 2012, the Surgery Center vacated the property, eight years before the expiration of its lease. Thereafter, the Women's Physicians Group attempted to secure a tenant that could optimize the value of the vacant first floor space, which was specifically designed for surgical use. No tenant was found, and the loan went into default in August 2012.

On December 13, 2012, the Trust commenced a foreclosure action against the Women's Physician Group, in the Marion Superior Court. In March 2013, the state court appointed an Indiana receiver for the Property. However, the receiver was also unsuccessful in locating a tenant for the Property, due to the use restriction and right of first refusal in the Deed.

The Trust notified Bank of America that it had violated Representation No. 8 of the MLPA and that Bank of America's violation had materially and adversely affected the value of the Loan, on October 18, 2013, The Trust requested that Bank of America either cure the violation or repurchase the Loan within ninety days, the sole remedies identified in both the MLPA and PSA.

> Section 3(c) of the MLPA provides, in relevant part, as follows,
>
> If the Seller receives, pursuant to Section 2.03(a) of the [PSA], written notice of a…Document Defect or a Breach relating to a Mortgage Loan, and if such Document Defect or Breach shall materially and adversely affect the value of the applicable Mortgage Loan or the interests of the Certificate holders therein, then the Seller shall, not later than 90 days from receipt of such notice…, cure such Document Defect or Breach, as the case may be, in all material respects, or, if such Document Defect or Breach … cannot be cured within such 90-day period, (i) repurchase the affected Mortgage Loan at the applicable Purchase Price not later than the end of such 90-day period.
>
> Similarly, Section 2.03(a) of the PSA provides, in relevant part, as follows,
>
> [I]f any party hereto determines that such Document Defect or Breach materially and adversely affects the value of the affected Mortgage Loan, the interest of the Certificate holders therein…the applicable [Special Servicer] shall…request in writing…that the applicable Mortgage Loan Seller, not later than 90 days from receipt of such written request…(i) cure such Document Defect or Breach, as the case may be, in accordance with Section 3 of the applicable Mortgage Loan Purchase Agreement, (ii) repurchase the affected Trust Mortgage Loan in accordance with Section 3 of the applicable Mortgage Loan Purchase Agreement.

Bank of America refused to cure or repurchase the Loan pursuant to the terms of the MLPA and PSA. Instead, Bank of America asserted that it was speculative whether St. Vincent Hospital would prevent alternative uses of the property; that the Trust had yet to experience a material and adverse effect on account of the use restriction or right of first refusal provisions; and that the use restriction and right of first refusal provisions were likely not enforceable under Indiana law.

On March 10, 2014, the receiver requested a release or modification from the use restriction in the Deed from St. Vincent Hospital. St. Vincent Hospital refused the receiver's request. On April 16, 2014, the receiver asked St. Vincent Hospital to permit 23 different uses on the Property. St. Vincent Hospital again refused the receiver's request, ostensibly because it did not want to allow competitors on its campus.

In May 2014, the Trust notified Bank of America of its communications with St. Vincent Hospital. Bank of America did not respond. Thereafter, on September 12, 2014, U.S. Bank filed this lawsuit, seeking specific enforcement of the MLPA and PSA remedies and damages relating to a breach of the MLPA and PSA contractual agreements.

## II. LEGAL STANDARD

### A.   Rule 12(b)(2)

Federal Rule of Civil Procedure 12(b)(2) requires dismissal of a claim where personal jurisdiction is lacking. When a defendant moves to dismiss under Rule 12(b)(2), the plaintiff bears the burden of demonstrating the existence of jurisdiction. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003); *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997).

When the court determines personal jurisdiction based only on reference to submissions of written materials, rather than based on evidence submitted at a hearing, a plaintiff simply needs to

make a *prima facie* case of personal jurisdiction. *Purdue Research Found.*, 338 F.3d at 782. In determining whether the plaintiff has met the *prima facie* standard, the plaintiff is entitled to a favorable resolution of all disputed relevant facts. *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 423-24 (7th Cir. 2010). The court may consider affidavits and all other documentary evidence that have been filed, and any conflicts must be resolved in favor of the plaintiff as the non-moving party. *Int'l Med. Grp., Inc. v. Am. Arbitration Ass'n*, 149 F. Supp. 2d 615, 623 (S.D. Ind. 2001).

A federal court's personal jurisdiction over a defendant in a diversity case is established when the defendant is subject to the jurisdiction of a court of general jurisdiction in the state where the court is located. Fed. R. Civ. P. 4(k)(1)(A); *NEXTT Sols., LLC v. XOS Techs., Inc.*, 71 F. Supp. 3d 857, 860 (N.D. Ind. 2014). Therefore, a district court must undertake and satisfy a two-step analysis in order to properly exercise personal jurisdiction over a non-resident defendant. First, the exercise of personal jurisdiction must comport with the state's long-arm statute; second, the exercise must comport with the due process clause of the Constitution. *Purdue Research Found.*, 338 F.3d at 779. Because Indiana's long-arm statute, Indiana Trial Rule 4.4(A), reduces the analysis of personal jurisdiction to the issue of whether the exercise of personal jurisdiction is consistent with the federal due process clause, the Court only needs to consider the second step of the analysis. *NEXTT Sols., LLC*, 71 F. Supp. 3d at 860; *LinkAmerica Corp. v. Albert*, 857 N.E.2d 961, 967 (Ind. 2006).

Due process requires that the defendant have "certain minimum contacts with [the forum State] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *RAR, Inc.*, 107 F.3d at 1276. These minimum contacts must have a basis in "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus

invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). Such purposeful availment is required to ensure that defendants may reasonably anticipate what conduct will subject them to the jurisdiction of a foreign sovereign. *Burger King*, 471 U.S. at 474.

Personal jurisdiction may be either specific or general. *Wilson v. Humphreys (Cayman) Ltd.*, 916 F.2d 1239, 1244 (7th Cir. 1990). Specific jurisdiction exists for controversies that arise out of or are related to the defendant's forum contacts. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984); *RAR, Inc.*, 107 F.3d at 1277. In contrast, general jurisdiction exists for controversies neither arising out of nor related to the defendant's forum contacts, and it is permitted only where the defendant has "continuous and systematic" general business contacts with the forum. *Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. at 415-16; *RAR, Inc.*, 107 F.3d at 1277.

**B.     Transfer of Venue**

Section 1404 of United States Code Title 28 states:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any other district or division to which all parties have consented.

28 U.S.C. § 1404(a). The purpose of § 1404(a) is "to prevent the waste of time, energy and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal quotations omitted). A transfer of venue based on 28 U.S.C. § 1404(a) requires an "individualized, case-by-case consideration of convenience and fairness. . . ." *Id.* at 622. A transfer of venue is appropriate if "(1) venue is proper in the transferor district, (2) venue and jurisdiction are proper in the transferee district, and (3) the transfer will serve the convenience of the parties, the convenience of the witnesses, and the interest

7

of justice." *State Farm Mut. Auto. Ins. Co. v. Estate of Bussell*, 939 F. Supp. 646, 651 (S.D. Ind. 1996) (citations omitted).  District courts have broad discretion to grant or deny a motion to transfer under § 1404(a), and will not be reversed absent a clear abuse of discretion.  *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1293 (7th Cir. 1989).

> 28 U.S.C. § 1631 states in relevant part:
>
> [W]hen a court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

28 U.S.C. § 1631.

### III. DISCUSSION

Bank of America primarily contends that dismissal or transfer is warranted because this Court lacks general and specific personal jurisdiction over it.  U.S. Bank responds that Bank of America waived its objection to personal jurisdiction, but if not waived, this Court also has general and specific personal jurisdiction over Bank of America.   The Court will address the assertions in turn.

A.    **Waiver of Personal Jurisdiction**

First, U.S. Bank asserts that Bank of America waived its objection to personal jurisdiction by registering to do business in Indiana and designating an agent for the purposes of service of process in the State of Indiana.  However, this argument is unconvincing.

Merely registering to do business in Indiana, though a necessary precursor to engaging in business activities in the state, does not establish personal jurisdiction over a corporation.  *Wilson v. Humphreys (Cayman) Ltd.*, 916 F.2d 1239, 1245 (7th Cir. 1989).  Further, registering to do business in Indiana and also appointing an agent for purposes of service of process, does not

establish personal jurisdiction over a corporation. *McManaway v. KBR*, 695 F. Supp. 2d 883, 895 (S.D. Ind. 2010).

The cases cited by U.S. Bank, which might suggest a contrary conclusion, involve unusual circumstances that do not apply in this case. *See Emp'rs Ins. of Wausau v. Banco De Seguros Del Estado*, 199 F.3d 937, 942-43 (7th Cir. 1999) (finding that a foreign corporation waived objection to personal jurisdiction by designating an agent for service of process and by agreeing to a "service of suit" clause in a contract); *R.R. Donnelley & Sons Co. v. Jet Messenger Serv., Inc.*, No. 03 C 7823, 2004 WL 1375402, at *3-4 (N.D. Ill. May 25, 2004) (finding that an American trucking corporation waived objection to personal jurisdiction by designating an agent for service of process in accordance with a federal motor carrier statute).

In addition, the cases cited by U.S. Bank, which do not clearly involve unusual circumstances, involve establishing personal jurisdiction under the Illinois long-arm statute and appear to be outliers. *See Consumer Program Adm'rs, Inc. v. K.B. Parrish & Co., L.L.P.*, No. 09 C 3731, 2009 WL 4788681, at *3 (N.D. Ill. Dec. 9, 2009) (holding that an American corporation waived objection to personal jurisdiction by designating an agent for service of process in the State); *Schwarz v. Nat'l Van Lines, Inc.*, 317 F. Supp. 3d 829, 835 (N.D. Ill. 2004) (holding the same in a contact case arising under a federal motor carrier statute). Because the *Consumer Program Adm'rs, Inc.* case does not seem in accordance with the Seventh Circuit's decisions in *Wilson* and *McManaway*, the Court declines to give it weight. Further, while it is impossible to conclusively determine from the court's minimal reasoning, the Court considers the *Schwarz* case to have potentially been influenced by the same unique reasoning found in *R.R. Donnelley and & Sons Co.*, namely establishing personal jurisdiction by designating an agent for service of process

in accordance with a federal motor carrier statute. Because that situation does not apply here, the Court also declines to give the *Schwarz* case weight.

Instead, consistent with *Wilson* and *McManaway*, the Court concludes that Bank of America did not waive its objection to personal jurisdiction by registering to do business in Indiana and designating an agent for service of process in the State of Indiana.

B.  **General Jurisdiction**

Second, U.S. Bank argues that the Court has general jurisdiction over Bank of America due to Bank of America's substantial financial dealings in Indiana. However, the Court is not persuaded.

General jurisdiction permits a defendant to be sued in the forum state regardless of the subject matter of the litigation. *Purdue Research Found.*, 338 F.3d at 787; *NEXTT Sols., LLC*, 71 F. Supp. 3d at 861. "[T]he constitutional requirement for general jurisdiction is considerably more stringent than that required for specific jurisdiction." *Purdue*, 338 F.3d at 787. General jurisdiction is permitted only where the defendant has "continuous and systematic" general business contacts with the forum state. *Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. at 415-16; *Purdue Research Found.*, 338 F.3d at 787.

Such contacts must be so extensive as to be tantamount to the defendant being constructively present in the forum state to such a degree that it would be "fundamentally fair to require it to answer in an Indiana court in *any* litigation arising out of *any* transaction or occurrence taking place *anywhere* in the world." *Purdue Research Found.*, 338 F.3d at 787 (emphasis in original). The general jurisdiction standard is rigorous because "the consequences can be severe: if a defendant is subject to general jurisdiction in a state, then it may be called into court there to

answer for any alleged wrong, committed in any place, no matter how unrelated to the defendant's contacts with the forum." *uBID*, 623 F.3d at 426.

In 2011, the United States Supreme Court clarified that general jurisdiction cannot be established solely upon "continuous and systematic" contacts with a forum state, but can only be established when a corporation's affiliations with the forum state are "so continuous and systematic as to render [the corporation] *essentially at home in the forum State.*" *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851, 2853-54 (2011) (emphasis added); *NEXTT Sols., LLC*, 71 F. Supp. 3d at 861-62.  In 2014, the Supreme Court reiterated the "essentially at home" standard and stated that the affiliation between the defendant and the forum state must be so continuous and systematic that the defendant is "comparable to a domestic enterprise in that State."  *Daimler AG v. Bauman*, 134 S. Ct. 746, 758 n.11, 761 (2014); *NEXTT Sols., LLC*, 71 F. Supp. 3d at 861-62.  Further, the Supreme Court emphasized that only in an "exceptional case" would general jurisdiction be established in a forum state outside of the corporation's state of incorporation or principal place of business.  *Daimler AG*, 134 S. Ct. at 761 n.19; *NEXTT Sols., LLC*, 71 F. Supp. 3d at 861-62.

The Seventh Circuit also appears to have adopted this "essentially at home" standard for establishing general jurisdiction over domestic corporations.  *See, e.g.*, *Abelesz v. OTP Bank*, 692 F.3d 638, 656 (7th Cir. 2012) (concluding that general jurisdiction did not exist where a corporation's accounts in the forum state amounted to 0.17 and 0.4 percent of their total accounts). So have numerous courts around the country.  *See, e.g.*, *NEXTT Sols., LLC*, 71 F. Supp. 3d at 861-62 (N.D. Ind. 2014); *Sullivan v. Sony Music Entm't*, No. 14 CV 731, 2014 WL 5473142, at *3 (N.D. Ill. Oct. 29, 2014); *Allstate Ins. Co. v. Electrolux Home Prods., Inc.*, No. 1:14 CV 329, 2014 WL 3615382, at *4 (N.D. Ohio July 18, 2014); *Loyalty Conversion Sys. Corp. v. Am, Airlines,*

*Inc.*, 2:13-CV-655, 2014 WL 4352544, at *5 (E.D. Tex. Sept. 2, 2014); *Brown v. CBS Corp.*, 19 F. Supp. 3d 390, 398-400 (D. Conn. 2014).

U.S. Bank argues that this Court has general jurisdiction over Bank of America due to Bank of America's substantial financial dealings in Indiana. In particular, U.S. Bank notes the following activities by Bank of America in Indiana: maintaining ten Merrill Lynch offices, operating at the University of Notre Dame, offering online banking service to Indiana account holders, owning over 2,000 properties in Indiana, originating 929 home mortgage loans and 163 small business loans between 2009 and 2011 to Indiana residents, recording 29,702 mortgages in Indiana between 2006 and 2015, and holding $1.25 billion in deposits from account holders in its Indiana branches.

U.S. Bank has submitted sufficient evidence to establish that Bank of America does business in Indiana and that such business may even be considered "continuous and systemic". However, since *Goodyear* and *Daimler*, these "continuous and systemic" contacts are no longer sufficient to establish general jurisdiction. Instead, Bank of America's contacts must be so continuous and systemic as to render Bank of America "essentially at home" in Indiana. At most, U.S. Bank has demonstrated that Bank of America's Indiana contacts are similar to the numerous other states in which Bank of America operates. *Daimler AG*, 134 S. Ct. at 762 n.20 ("[a] corporation that operates in many places can scarcely be deemed at home in all of them. Otherwise, "at home" would be synonymous with 'doing business' tests before specific jurisdiction evolved in the United States.").

U.S. Bank's evidence does not demonstrate the "exceptional case" wherein a corporation can be found to be essentially at home outside the state of its incorporation, in this case North Carolina. As a result, the court concludes that it does not have general jurisdiction over Bank of America.

C.     **Specific Jurisdiction**

Third, U.S. Bank argues that this Court has specific jurisdiction over Bank of America because of loans originating in Indiana.  While this argument well taken, the Court is not persuaded.

Specific jurisdiction is not appropriate merely because a plaintiff's cause of action arose out of a general relationship between the parties.  *RAR, Inc.*, 107 F.3d at 1278 (*quoting Sawtelle v. Farrell*, 70 F.3d 1381, 1389 (1st Cir. 1995)).  Rather, the action must directly arise out of the specific contacts between the defendant and the forum state.  *Id*.  Therefore, in specific jurisdiction cases, a court must decide whether the defendant has "purposefully established minimum contacts within the forum State" and consider whether, by traditional standards, those contacts would make personal jurisdiction reasonable and fair under the circumstances.  *Burger King*, 471 U.S. at 475-77; *RAR, Inc.*, 107 F.3d at 1277.  Specific jurisdiction requires that the defendant purposefully availed itself of the privilege of conducting activities within the forum state so that the defendant reasonably anticipates being haled into court there.  *Burger King*, 471 U.S. at 474-75; *RAR, Inc.*, 107 F.3d at 1277.

A single contact with the forum state may satisfy the standard of minimum contacts if the contact produces a substantial connection with the forum state and the connection is related to the lawsuit.  However, a defendant cannot be brought into a jurisdiction "solely as a result of random, fortuitous, or attenuated contacts or of the unilateral activity of another party or a third person." *Burger King*, 471 U.S. at 475.  Accordingly, when evaluating the minimum contacts, courts are reminded that specific jurisdiction requires that the suit "arise out of" and "be related to" the minimum contacts with the forum state; and a court cannot simply aggregate all of the defendant's contacts with the state.  *RAR, Inc.*, 107 F.3d at 1277-78 ("[u]nless [potential defendants'] conduct

are continuous and systematic enough to rise to the level of general jurisdiction, individuals and corporations must be able to conduct interstate business confident that transactions in one context will not come back to haunt them unexpectedly in another."). This inquiry demands an assessment of the relationship among the defendant, the forum, and the litigation. *NUCOR Corp. v. Aceros Y Maquilas de Occidente, S.A. de C.V.*, 28 F.3d 572, 580 (7th Cir. 1994).

When the defendant's contacts with the forum state concern a contractual relationship, an out-of-state party's contract with an in-state party is not alone sufficient to establish the requisite minimum contacts. *Burger King*, 471 U.S. at 478; *RAR, Inc.*, 107 F.3d at 1277. Instead, the court must consider the parties' "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" in determining whether there were sufficient minimum contacts to make litigation in the forum state foreseeable to the defendant. *Burger King*, 471 U.S. at 479; *RAR, Inc.*, 107 F.3d at 1277; *Citadel Grp. Ltd. v. Wash. Reg'l Med. Ctr.*, 536 F.3d 757, 761 (7th Cir. 2008). In this regard, "it is only the dealings between the parties in regard to the disputed contract that are relevant to minimum contacts analysis." *RAR, Inc.*, 107 F.3d at 1278. In addition, "[t]o be relevant for personal jurisdiction, . . . past contacts involving the forum state should either bear on the substantive legal dispute between the parties or inform the court regarding the economic substance of the contract." *Id.*

U.S. Bank works hard to shift the focus away from the MLPA and PSA agreements, which are the foundation of its claim, and onto the underlying issues with the Loan and associated Mortgage. Specifically, U.S. Bank spends a significant amount of time discussing the formation of the Loan between the Women's Physicians Group and LaSalle and the Deed which contains the use restriction and the right of first refusal provisions, both of which are recorded in Indiana. However, in this lawsuit, U.S. Bank is not attempting to enforce the Loan or amend the Deed.

Instead, U.S. Bank is suing Bank of America for breach of a contract warranty made pursuant to the MLPA, and is attempting to enforce the cure or repurchase remedies in both the MLPA and PSA.  These contracts, and the warranties and remedies therein, were negotiated, drafted, entered into, underwritten, and rated in New York; and both contracts are governed by New York law.

While it is true that determining whether there was a breach of contract warranty under the MLPA will hinge somewhat on whether the use restriction and the right of first refusal are enforceable and whether such restrictions "materially and adversely" interfere with the use of the Property, it does not change the fact that U.S. Bank's claim is based solely in the language of the MLPA or that U.S. Bank's requested remedies are founded exclusively upon the terms of the MLPA and the PSA.

The Seventh Circuit law is clear in circumstances such as this one, that it is "only the dealings between the parties in regard to the *disputed* contract that are relevant to minimum contacts analysis." *RAR, Inc.*, 107 F.3d at 1278.  Because the *disputed* contracts in U.S. Bank's case are the MLPA and the PSA, which have no connections to Indiana, the court concludes that it does not have specific jurisdiction over Bank of America for this dispute. *Compare Aurora Bank FSB v. Network Mortg. Servs., Inc.*, No. 13-CV-00047-PAB, 2014 WL 1034588, at *4 (D. Colo. March 17, 2014) (finding specific jurisdiction in the state where a mortgage purchase agreement, similar to the MLPA in U.S. Bank's case, was negotiated and performed); *Vanderbilt Mortg. and Fin., Inc. v. First Franklin Fin. Corp.,* No. 3:10-CV-7, 2011 WL 1430226, at *6-7 (E.D. Tenn. April 14, 2011) (finding specific jurisdiction in the state where a mortgage purchase agreement, similar to the MLPA in U.S. Bank's case, was negotiated and performed; and where warranties, similar to those made in the MLPA in U.S. Bank's case, were made).

**D.**    **Transfer**

As an alternative to dismissal, Bank of America suggests that transfer of this case to the Southern District of New York would be appropriate. The Court agrees. 28 U.S.C. § 1631 allows transfer when the "court finds that there is a want of jurisdiction, See *Walker v. Carnival Cruise Lines, Inc.*, 681 F. Supp. 470, 476 (N.D. Ill. 1987). Additionally, a transfer of venue is appropriate under 28 U.S.C. § 1404(a) because venue is proper in the transferor district, venue and jurisdiction are proper in the transferee district, and the transfer will serve the interest of justice.

Neither party suggests that jurisdiction or venue are improper in New York. In addition, the Court considers this case to be more appropriately filed in the Southern District of New York, where both the MLPA and PSA, the foundational contracts upon which U.S. Bank's claims rest, were negotiated, drafted, entered into, underwritten, and rated. Accordingly, the Court considers transfer to the Southern District of New York to be appropriate.

### IV. CONCLUSION

For the reasons stated above, the Court concludes that it does not have personal jurisdiction over Bank of America. As a result, the Court **TRANSFERS** this case to the Southern District of New York, pursuant to 28 U.S.C. § 1631, and **DENIES AS MOOT** Bank of America's Motion to Dismiss (Filing No. 23).

The Clerk is ordered to transfer this matter to the Southern District of New York.

**SO ORDERED.**

Date: 10/14/2015                   _[signed] Tanya Walton Pratt_

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Peter S. French
BENESCH, FRIEDLANDER, COPLAN & ARONOFF, LLP
pfrench@beneschlaw.com

Stephanie Sackellares Penninger
BENESCH, FRIEDLANDER, COPLAN & ARONOFF, LLP
spenninger@beneschlaw.com

Christopher Charles Hagenow
BLACKWELL, BURKE & RAMSEY, P.C.
chagenow@bbrlawpc.com

David Michael Bullington
BLACKWELL, BURKE & RAMSEY, P.C.
dbullington@bbrlawpc.com

Colleen M. Mallon
VENABLE LLP
cmmallon@venable.com

Gregory A. Cross
VENABLE LLP
gacross@venable.com

John V. Sunder
VENABLE LLP
jvsunder@venable.com

Lauren E Cuneo
WINSTON & STRAWN LLP
lcuneo@winston.com

Luke A Connelly
WINSTON & STRAWN LLP
lconnelly@winston.com