UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x
U.S. BANK NATIONAL ASSOCIATION, as successor to
Wells Fargo Bank, National Association, as Trustee for the
Registered Holders of Citigroup Commercial Mortgage Trust
2007-C6, Commercial Mortgage Pass-Through Certificates,
Series 2007-C6, acting by and through its Special Servicer
CWCapital Asset Management LLC,

                Plaintiff,                Case No.: 1:15-cv-08153-PGG

      v.

Bank of America, N.A.,

                Defendant.
------------------------------------------------------------------------x

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION**
**TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

                                  VENABLE LLP
                                  Gregory A. Cross (*pro hac vice*)
                                  Colleen M. Mallon (*pro hac vice*)
                                  750 East Pratt Street, Suite 900
                                  Baltimore, Maryland 21202
                                  (410) 244-7400 (telephone)
                                  (310) 244 7742 (facsimile)

                                  Kostas D. Katsiris
                                  Rockefeller Center
                                  1270 Avenue of the Americas, 24th Floor
                                  New York, New York 10020
                                  (212) 307-5500 (telephone)
                                  (212) 307-5598 (facsimile)

                                  *Attorneys for Plaintiff*

**TABLE OF CONTENTS**

**PAGE**

PRELIMINARY STATEMENT ........................................................................................................ 1

FACTUAL BACKGROUND ............................................................................................................. 3

    A.    The Loan And Deed That Runs With The Property ............................................. 3

    B.    The Property And Loan Default .............................................................................. 4

    C.    BofA's Representation And Warranty In The MLPA And The Material Adverse Element Of The Trust's Claim .................................................................. 6

    D.    The Trust's Notice And BofA's Refusal To Repurchase The Loan ...................... 8

PROCEDURAL BACKGROUND ..................................................................................................... 9

LEGAL STANDARD ........................................................................................................................ 9

ARGUMENT ................................................................................................................................... 10

    I.    The Trust Was Not Entitled To Demand Cure Or Repurchase Until There Was A Material And Adverse Effect ................................................................... 10

    II.    The Material And Adverse Impact Element Of The Trust's Claim Was Not Addressed In Any Of The Cases Cited By BofA ............................................... 14

CONCLUSION ................................................................................................................................ 15

# TABLE OF AUTHORITIES

| CASES | PAGE(S) |
|---|---|
| Abbas v. Dixon, 480 F.3d 636 (2d Cir. 2007) | 10 |
| Abercrombie v. Andrew Coll., 438 F. Supp. 2d 243 (S.D.N.Y. 2006) | 10 |
| ACE Sec. Corp. v. DB Structured Prods., 25 N.Y.3d 581 (2015) | 14, 15 |
| Aetna Life & Cas. v. Nelson, 67 N.Y.2d 169 (N.Y. 1986) | 11, 15 |
| Ashcroft v. Iqbal, 556 U.S. 662 (2009) | 10 |
| Bank of New York Mellon v. WMC Mortgage, LLC, 17 N.Y.S.3d 613 (N.Y. Sup. Ct. 2015) | 14, 15 |
| Bano v. Union Carbide Corp., 361 F.3d 696 (2d Cir. 2004) | 13 |
| Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) | 10 |
| Bice v. Robb, 324 F. App'x 79 (2d Cir. 2009) | 13 |
| D'Antonio v. Metro. Transp. Auth., No. 06-cv-4283 (KMW), 2008 WL 582354 (S.D.N.Y. March 4, 2008) | 12, 13 |
| Davis v. Bryan, 810 F.2d 42 (2d Cir.1987) | 13 |
| Deutsche Bank Nat. Trust Co. v. Quicken Loans Inc., No. 14-3373-CV, 2015 WL 7146515 (2d Cir. Nov. 16, 2015) | 14, 15 |
| G.W. White & Son, Inc. v. Tripp, 1995 WL 65058 (N.D.N.Y. Feb. 14, 1995) | 13 |
| Harris v. City of New York, 186 F.3d 243 (2d Cir. 1999) | 10 |
| John J. Kassner & Co. v. City of New York, 46 N.Y.2d 544 (N.Y. 1979) | 11, 15 |
| Johnson v. Rowley, 569 F.3d 40 (2d Cir. 2009) | 9 |
| LaSalle Bank Nat'l Ass'n v. CIBC Inc., 2011 WL 4943341 (S.D.N.Y. Oct. 17, 2011) | 12 |
| LaSalle Bank Nat'l Ass'n v. Citicorp Real Estate, Inc., 2002 WL 31729632 (S.D.N.Y. Dec. 5, 2002) | 12 |
| Santo B. v. Roman Catholic Archdiocese of N.Y., 51 A.D.3d 956 (N.Y. App. Div. 2008) | 13 |

10478924

U.S. Bank v. Dexia Real Estate Capital Mkts., 2014 WL 3368670
    (S.D.N.Y. July 9, 2014) ...................................................................................................11

U.S. Bank Nat'l Assoc. v. Women's Physician Grp., LLP,
    Cause No. 49D04-1212-MF-047603 ................................................................................5

Wells Fargo Bank, N.A. v. JPMorgan Chase Bank, 2014 WL 1259630
    (S.D.N.Y. Mar. 27, 2014) ................................................................................................11

**STATUTES**

Fed. R. Civ. P. 12(b)(6) ..................................................................................................................9

Fed. R. Civ. P. 12(c) ......................................................................................................................9

10478924

Plaintiff U.S. Bank National Association, as successor to Wells Fargo Bank, N.A., as Trustee for the Registered Holders of Citigroup Commercial Mortgage Trust 2007-C6, Commercial Mortgage Pass-Through Certificates, Series 2007-C6 (the "Trust"), acting by and through its Special Servicer CWCapital Asset Management LLC, submits this memorandum in opposition to the motion for judgment on the pleadings (the "Motion") filed by Defendant Bank of America, N. A. ("BofA").

## PRELIMINARY STATEMENT[1]

This breach of contract case concerns BofA's refusal to honor its contractual obligation to repurchase a $9 million commercial mortgage loan (the "Loan") that BofA originated and sold into the Trust. The Trust's collateral for the Loan is a two-story commercial building located in Indianapolis, Indiana (the "Property"). BofA agreed to cure or repurchase the Loan if it breached any representation and warranty that it made with regard to the Loan only after such breach materially and adversely affected the Loan's value. The Trust's sole recourse for a breach that resulted in a material and adverse impact was to request that BofA cure or repurchase the Loan.

The Trust exercised its sole remedy on October 18, 2013 by providing written notice to BofA that the Loan breached at least one representation and warranty in the contract, and that such breach had caused a material and adverse effect on the Trust, thereby triggering BofA's obligation to either cure the breach or repurchase the Loan within 90 days. Specifically, a Deed that runs with the Property contains, among other things, Use Restrictions (each capitalized term defined infra) that are unreasonably broad and prohibitive, and such restrictions are being

---

[1] The Exhibits identified herein by letters are attached to the Declaration of Luke A. Connelly dated December 22, 2015 in Support of BofA's Motion. The Exhibits identified herein by number are attached to the Declaration of Colleen M. Mallon dated January 11, 2016 in Support of the Trust's Memorandum of Law in Opposition to BofA's Motion.

1

enforced against the Trust, rendering the Trust's ability to lease or convey the Property impracticable.

New York law is clear that a statute of limitations only begins to run on a claim when all of the elements that establish the claim – as defined in the contract – have occurred and the plaintiff has a legal right to make the demand. Here, the contract at issue clearly states that a breach must "materially and adversely affect the value of the applicable Mortgage Loan or the interests of the Certificateholders" before the Trust is entitled to make a demand on BofA. BofA agrees:

> Both the MLPA and the PSA provide a mechanism whereby the Trustee or the Special Servicer, acting on behalf of the Certificateholders, may, under certain circumstances, demand that a loan seller repurchase a specific loan . . ., including ***where a representation and warranty is breached and such breach has a material and adverse effect on the value of the property or the loan***.

BofA's Memorandum of Law in Support of Motion ("BofA Br.") at 3 (emphasis added).

In the three cases that BofA relies upon to support its contention that the Trust's breach claim is time barred, the parties agreed that the material and adverse impact occurred when the loans were sold. Here, however, in its October 2015 Answer, BofA denied that its breach had any material and adverse effect on the Loan's value, and in fact "admits that the [P]roperty's value at the time the [L]oan was included in the CMBS transaction [i.e., July 2007] was optimized." In its Complaint, the Trust alleges that the material and adverse impact occurred when the Property's major tenant vacated the Property in April 2012, eight years before its lease expired and efforts to find a replacement tenant failed as a result of the Use Restrictions in the Deed. Therefore, the Trust's lawsuit filed less than three years later in September 2014 falls within New York's six-year statute of limitations, and BofA's Motion should be denied.

2

**FACTUAL BACKGROUND**

A.  **The Loan And Deed That Runs With The Property**

This case concerns BofA's refusal to repurchase a $9,000,000 commercial mortgage loan (the "Loan") that LaSalle Bank National Association ("LaSalle")[2] made to Women's Physicians Group, LLP (the "Borrower"). See Compl. ¶ 8. The Loan is evidenced by a Promissory Note dated April 30, 2007 (the "Note"). Id. ¶¶ 8-9.

Repayment of the Loan is secured by, among other things, a two-story commercial building located at 8081 Township Line Road, Indianapolis, Indiana 46237 (the "Property"). Id. ¶ 9. The Property is encumbered by that certain Mortgage, Security Agreement and Fixture Filing (the "Mortgage") executed by the Borrower dated as of April 30, 2007. Id. The Note, the Mortgage, the Deed, and all other documents executed in connection with the Loan are collectively referred to herein as the "Loan Documents." Id. After the origination of the Loan, the Trust became the holder and owner of the Loan Documents pursuant to a series of assignments. Id. ¶ 10.

BofA made the Loan to the Borrower for the purpose of refinancing existing debt related to the Property that the Borrower had previously acquired. Id. ¶ 11. In December 1999, the Borrower purchased the Property for $3,512,500.00 from Galen Hospital Corporation. Id. ¶ 12. St. Vincent Hospital is the successor in interest to Galen Hospital Corporation, Inc. Id. ¶¶ 13, 14. The Property sits on the campus of St. Vincent Hospital. Id. ¶ 14. When the Borrower acquired the Property, it executed a Special Warranty Deed (the "Deed"), dated December 16, 1999. Id. ¶ 16.

---

[2] On or about October 17, 2008, BofA became successor-by-merger to LaSalle. All references to BofA will hereinafter include LaSalle.

The Deed contains title exceptions that run with the Property. Specifically, paragraph 1 of Exhibit C to the Deed contains use restrictions (the "Use Restrictions") that provide:

> ***The Property/Real Estate may be used and occupied only for an ambulatory surgery center and medical offices for the private practice of medicine and for no other purposes without the prior written consent of "Hospital"*** (as defined below), which consent may be withheld in Hospital's sole discretion. In particular, without limiting the generality of the foregoing, the following uses shall not be permitted on the Property/Real Estate: (a) an acute care hospital, medical or surgical or specialty hospital, (b) a facility providing birthing services, (c) a facility providing outpatient psychiatric services (other than services of a psychologist), (d) a facility providing "Ancillary Medical Services of Facilities" (as defined herein). . . . As used herein, "Ancillary Medical Services or Facilities" shall mean (1) any form of testing for diagnostic or therapeutic purposes (including, but not limited to, preoperative or postoperative ancillary or diagnostic testing), provision or operation of a laboratory (including, without limitation, a pathology laboratory or a clinical laboratory), diagnostic imaging services (which include, without limitation, the following testing facilities: fluoroscopy, x-ray, plan film radiology, computerized tomography (CT) ultrasound, radiation therapy, mammography and breast diagnostics, nuclear medicine testing and magnetic resonance imaging), physical therapy services, or respiratory therapy service, (2) the provision of any medical or related service to or for any person that is in addition to the examination and diagnosis of patients performed directly by a Physician or by other health care professionals under the direct supervision of a Physician, or a facility operated for the provision of any such service, and (3) engaging in the business of dispensing of pharmaceutical services or a pharmacy. . . .

Id. ¶ 17 (emphasis added).

B.    **The Property And Loan Default**

The Property is located within St. Vincent Hospital's campus and is connected to St. Vincent Women's Hospital. Id. ¶ 21. The first floor of the Property is a surgical center and the second floor consists of offices. Id. The Property's major tenant, Women's Physician Surgery Center, LLC (the "Surgery Center"), occupied 55% of the space available. The Surgery Center

4

vacated the Property in April 2012, eight years before its lease expired.  Id. ¶ 22.  The Surgery Center was partially owned by St. Vincent Hospital.  Id.

The Surgery Center's use of the Property optimized its value.  Id. ¶ 23.  The Surgery Center operated the first floor space as it was intended and for which the Property is outfitted – an ambulatory surgery center – but the provision of most other services is prohibited by the Use Restrictions in the Deed, unless consent from St. Vincent Hospital (which it can withhold in its discretion) is given.  Id. ¶¶ 23-25.  After the Surgery Center vacated the Property, the Borrower attempted to secure a tenant that could replicate the Surgery Center's cash flow and optimize the surgical design of the first floor of the Property.  Id. ¶ 26.  The Borrower was unable to find a new tenant and began making partial payments on the Loan during the summer of 2012.  Id.

The Loan went into default in August 2012.  Id. ¶ 27.  On December 13, 2012, the Trust commenced a foreclosure action against the Borrower in Indiana state court and sought the appointment of an Indiana receiver for the Property.  See U.S. Bank Nat'l Assoc. v. Women's Physician Grp., LLP, Cause No. 49D04-1212-MF-047603.  In March 2013, the court appointed DTM Real Estate Services, LLC as the receiver for the Property.  Compl. ¶ 28.  Like the Borrower, the receiver was unable to find a suitable tenant replacement for the Surgery Center due to the unreasonably broad and prohibitive Use Restrictions in the Deed.  Id. ¶ 29.

On or about March 10, 2014, the receiver requested from St. Vincent Hospital a general release from, or modification to, the Use Restrictions.  Id. ¶ 30.  St. Vincent Hospital refused to waive the Use Restrictions or to modify them to make them less restrictive.  Id. ¶ 30.  Thereafter, on or about April 16, 2014, the receiver asked St. Vincent Hospital to permit twenty-three (23) uses on the Property.  Id. ¶ 31.  St. Vincent Hospital responded by stating that it intended to maintain and enforce the Use Restrictions as presently written, and refused to consent to the uses

requested by the receiver, which were prohibited by the Use Restrictions. Id. St. Vincent Hospital will not permit the Property to be used in any manner that competes with the services that it provides. Id. ¶ 32.

### C. BofA's Representation And Warranty In The MLPA And The Material Adverse Element Of The Trust's Claim

On July 25, 2007, LaSalle and Citigroup Commercial Mortgage Securities Inc. ("CCMSI") executed a Mortgage Loan Purchase Agreement (the "MLPA"), which provided for the sale of certain commercial mortgage loans from LaSalle to CCMSI, including the Loan. Id. ¶ 5. In the MLPA, LaSalle made representations and warranties regarding the Loan and Mortgage to the Trust, including among others, representation 8:

> Each related *Mortgage* is a valid and enforceable first lien on the related *Mortgaged Property subject only to* the exceptions and limitations set forth in representation (5) above and the following title exceptions . . . (b) covenants, conditions and restrictions, rights of way, easements and other matters of public record, none of which, individually or in the aggregate, materially and adversely interferes with the current use of the *Property* or the security intended to be provided by such *Mortgage* or with the *Mortgagor's* ability to pay its obligations under the Mortgage Loan when they become due or materially and adversely affects the value of the *Mortgaged Property*, . . . .

Id. ¶ 34; Ex. B at I-2. The Use Restrictions in the Deed are contrary to MLPA representation 8. Compl. ¶ 36. The Use Restrictions have prevented the Trust from securing a suitable replacement tenant for the Property or repositioning the Property, and have severely limited to whom it can convey the Property. Id. ¶ 38.

At the time of the sale to CCMSI, LaSalle knew that the Loan was to be assigned to the Trust. Id. ¶¶ 7, 35. As part of the Trust, the Loan is administered under the terms of a certain Pooling and Servicing Agreement (the "PSA") dated as of July 1, 2007. Id. ¶ 7. The MLPA and the PSA expressly prescribe the sole remedy that is available to the Trust for BofA's breach of a

representation that materially and adversely affects the value of the applicable Loan or interests of the Certificateholders: namely, to cure or repurchase the Loan.  Id. ¶¶ 45-46.  Section 3(c) of the MLPA provides:

> If the Seller receives, pursuant to Section 2.03(a) of the [PSA], written notice of a . . . Document Defect or a Breach relating to a Mortgage Loan, ***and if such Document Defect or Breach shall materially and adversely affect the value of the applicable Mortgage Loan or the interests of the Certificateholders*** therein, then the Seller shall, not later than 90 days from receipt of such notice . . ., cure such Document Defect or Breach, as the case may be, in all material respects, or, if such Document Defect or Breach . . . cannot be cured within such 90-day period, (i) repurchase the affected Mortgage Loan at the applicable Purchase Price not later than the end of such 90-day period . . .

Id. ¶ 43 (emphasis added); Ex. B, MLPA at § 3(c).  See also Compl. ¶ 44; Ex. C, PSA at § 2.03(a).  Thus, the MLPA makes clear that the Trust did not have a right to demand that BofA cure or repurchase the Loan until a material and adverse effect had occurred.  Compl. ¶¶ 43-46.  BofA agrees that there must be both a breach and material and adverse impact on the Trust for the Trust's claims to accrue:

> Both the MLPA and the PSA provide a mechanism whereby the Trustee or the Special Servicer, acting on behalf of the Certificateholders, may, under certain circumstances, demand that a loan seller repurchase a specific loan . . ., including ***where a representation and warranty is breached <u>and</u> such breach has a material and adverse effect on the value of the property or the loan***.

BofA Br. at 3 (emphasis added).

Finally, Section 3(f) of the MLPA clearly states that demanding that BofA cure the violation or repurchase the Loan is the sole remedy available to the Trust.  Compl. ¶ 45; Ex. B, MLPA at § 3(f) ("This <u>Section 3</u> provides the sole remedy available to the Certificateholders or the Trustee on behalf of the Certificateholders, respecting any Document Defect or Breach ….").  See also Compl. ¶ 46; Ex. C, PSA at § 2.03(d) ("Each Mortgage Loan Purchase Agreement

7

provides the sole remedies available to the Certificateholders, or the Trustee on behalf of the Certificateholders …").

**D.     The Trust's Notice And BofA's Refusal To Repurchase The Loan**

On October 18, 2013, the Trust gave BofA written notice that its breach of MLPA representation 8 materially and adversely affected the value of the Loan, the value of the Property, or the interests of Certificateholders. Compl. ¶ 41; Ex. D. Pursuant to Section 3(c) of the MLPA and Section 2.03(a) of the PSA, the Trust requested that BofA either cure the violation or repurchase the Loan for the Purchase Price (as defined in the PSA) within ninety (90) days. Compl. ¶ 42.

In its January 2014 response, BofA denied any responsibility and refused to cure or repurchase the Loan. Id. ¶ 47; Ex. E. Notably, BofA contended that the Trust's notice was premature and "speculative" because the Trust had not yet experienced a material and adverse effect as a result of the Use Restrictions in the Deed:

> The Demand also noted that Paragraph 1 of the Deed conditions certain specified uses of the property (*e.g.*, an acute care center, a birthing facility, *et al.*) upon consent of the Hospital. However, you do not suggest that the Hospital has refused to consent to any proposed use, or that it has even been asked to do so. We note, in that regard, that part of the property was being utilized in 2007 for a use that was permissible only because the Hospital had consented to such use. It is entirely speculative to suggest that the Hospital would not consent to other such uses. . . .
>
> \*       \*       \*       \*
>
> Finally, we also note that it is questionable whether the provisions of . . . [the Use Restriction] are even valid and enforceable. ***We need not address that issue given the absence of any proof that those provisions, assuming their validity and enforceability, had any impact upon the value of the Mortgaged Property***.

Id. (emphasis added). After receiving BofA's refusal letter, the Trust advised BofA in May 2014 of St. Vincent Hospital's refusal to waive or modify the Use Restrictions and to consent to any of

the specific uses identified by the receiver. Id. ¶ 48. BofA did not respond. Id. ¶ 49. In its Answer filed on October 23, 2015, BofA once again denied that there was any material and adverse effect on the value of the Property or the Loan, and in fact admitted that the Loan's value when it was sold to the Trust in July 2007 was "optimized." Ex. 8 at ¶¶ 23, 41, 48, 53, 54, 59, 62.

## PROCEDURAL BACKGROUND

The Trust filed its Complaint in the Southern District of Indiana on September 12, 2014. Dkt. 1. On December 3, 2014, BofA moved to dismiss on the basis of lack of personal jurisdiction and improper venue, or alternatively, moved to transfer the case to this Court. Dkt. 23. Over the Trust's objections, on October 14, 2015, the Southern District of Indiana (the "Transferor Court") granted BofA's alternative motion to transfer venue, transferring the case to this Court. Dkts. 27; 39, Entry Granting Motion to Transfer Venue ("Transfer Order") at 16. For the reasons stated in the Trust's Motion to Retransfer to the Southern District of Indiana, the Trust maintains that the Transferor Court has personal jurisdiction over BofA, and that the Southern District of Indiana is the most appropriate forum for this litigation. The Transfer Order also created a statute of limitations issue where none existed before because Indiana's relevant statute of limitations is ten years. After the case was transferred to this Court, on October 23, 2015, BofA filed an Answer, Dkt. 44, Ex. 8, and requested leave to file the instant Motion.

## LEGAL STANDARD

In deciding a motion for judgment on the pleadings pursuant to Rule 12(c), courts apply "the same ... standard applicable to dismissals pursuant to Fed. R. Civ. P. 12(b)(6)." Johnson v. Rowley, 569 F.3d 40, 43 (2d Cir. 2009) (citation omitted). This Court must therefore "accept all factual allegations in the complaint as true and draw all reasonable inferences in [plaintiff's]

9

favor." Id.  To survive a motion for judgment on the pleadings, the plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A facially plausible claim is one where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

BofA's Motion is based on statute of limitations, which is an affirmative defense under Fed. R. Civ. P. 8(c).  Therefore, the standard this Court is to apply to the instant Motion is "stricter" and it cannot be granted unless it appears beyond doubt that the Trust can prove no set of facts in support of its claim which would entitle it to relief.  E.g., Abercrombie v. Andrew Coll., 438 F. Supp. 2d 243, 261 (S.D.N.Y. 2006).  "The pleading requirements in the Federal Rules of Civil Procedure . . . do not compel a litigant to anticipate potential affirmative defenses, such as the statute of limitations, and to affirmatively plead facts in avoidance of such defenses." Abbas v. Dixon, 480 F.3d 636, 640 (2d Cir. 2007); Harris v. City of New York, 186 F.3d 243, 251 (2d Cir. 1999) (surviving dismissal on statute of limitations grounds requires only allegations consistent with a claim that would not be time-barred).

## ARGUMENT

For the reasons set forth in the Trust's Motion to Retransfer, this case belongs in the Southern District of Indiana where there is no limitations issue because of Indiana's ten-year statute of limitations.  Nevertheless, even if New York's six-year statute of limitations were to apply, the Trust's lawsuit is still timely and BofA's contrary arguments fail as a matter of law.

### I. The Trust Was Not Entitled To Demand Cure Or Repurchase Until There Was A Material And Adverse Effect

Under New York law, a breach of contract claim accrues only once "all of the facts necessary to the cause of action have occurred so that the party would be entitled to obtain relief

in court[.]" Aetna Life & Cas. v. Nelson, 67 N.Y.2d 169, 175 (N.Y. 1986). "[W]hen the right to final payment is subject to a condition, the obligation to pay arises and the cause of action accrues, only when the condition has been fulfilled." John J. Kassner & Co. v. City of New York, 46 N.Y.2d 544, 550 (N.Y. 1979). Parties to a contract are free to agree upon conditions, and the Trust and BofA contractually agreed to the material and adverse effect condition.

Under the MLPA, the Trust could not make a demand on BofA to cure or repurchase the Loan *until* a breach of any of the representations and warranties it gave in the MLPA had resulted in a *material and adverse* effect on the value of the Loan or the interests of any Certificateholder. Compl. ¶ 43, Ex. B, MLPA at § 3(c); Compl. ¶ 44, Ex. C, PSA at § 2.03(a). BofA agrees that the material and adverse impact is an element of the Trust's claim:

> Both the MLPA and the PSA provide a mechanism whereby the Trustee or the Special Servicer, acting on behalf of the Certificateholders, may, under certain circumstances, demand that a loan seller repurchase a specific loan . . ., including *where a representation and warranty is breached* and *such breach has a material and adverse effect on the value of the property or the loan*.

BofA Br. at 3 (emphasis added).

Courts in other commercial mortgage-backed securities breach of contract cases have repeatedly recognized that in order to demand cure or repurchase there must be *both* a breach of a representation and warranty *and* a material and adverse effect caused by such breach. See U.S. Bank v. Dexia Real Estate Capital Mkts., 2014 WL 3368670, at *6 (S.D.N.Y. July 9, 2014) (denying seller's motion to dismiss based on statute of limitations defense because there was no material and adverse impact until almost five (5) years after the loan was sold to the trust); Wells Fargo Bank, N.A. v. JPMorgan Chase Bank, 2014 WL 1259630 (S.D.N.Y. Mar. 27, 2014) (agreeing that the material and adverse effect was an element that needed to be satisfied in order for the plaintiff's claim to accrue, and concluding that such element existed one year before the

11

loan was even sold to the trust);³ LaSalle Bank Nat'l Ass'n v. CIBC Inc., 2011 WL 4943341, at *3 (S.D.N.Y. Oct. 17, 2011) (recognizing that the mortgage loan purchase agreement provides that an actionable breach must have a "material and adverse effect" on the property, the loan, or the interests of investors); LaSalle Bank Nat'l Ass'n v. Citicorp Real Estate, Inc., 2002 WL 31729632, at *3 (S.D.N.Y. Dec. 5, 2002) (holding that to "state a claim, LaSalle must allege *both* a breach of a representation or warranty . . . *and* a material and adverse effect caused by the breach" (emphasis added)).

Here, contrary to BofA's contention, the statute of limitations did not start to run when the Loan was sold in July 2007 because, as alleged in the Complaint, BofA's breach of MLPA representation 8 had not yet materially and adversely affected the value of the Loan. The material and adverse impact resulted when the Surgery Center – the Property's major tenant – vacated the Property in April 2012, eight years before its lease expired, and efforts to find a replacement tenant failed as a result of the Use Restrictions in the Deed. Compl. ¶¶ 22-26, 29-32, 37-38, 40-41, 48, 53-54, 59, 62. It would be error to find that the Complaint alleges otherwise as a basis for dismissal. See D'Antonio v. Metro. Transp. Auth., 2008 WL 582354, at *9 (S.D.N.Y. March 4, 2008) (refusing to dismiss contract claim on statute of limitations grounds because defendant's contention that breach occurred at a particular point in time was not evident from the facts alleged in the complaint).

Further, according to BofA, even assuming it breached MLPA representation 8, such breach had no material and adverse impact on the value of the Loan or the Property. In its January 2014 response, BofA denied the existence of any material and adverse impact and labeled the Trust's notice as premature and "speculative" because there was no material adverse

---

³ The decisions in Dexia and Wells Fargo are currently on appeal and under consideration by the Court of Appeals for the Second Circuit.

impact. See Ex. E ("We need not address that issue given the absence of any proof that those provisions [in the Deed], assuming their validity and enforceability, had any impact upon the value of the Mortgaged Property."). After informing BofA in May 2014 that St. Vincent's Hospital refused the Trust's request to waive or modify the Use Restrictions and to consent to certain enumerated specific uses of the Property, BofA still refused to cure or repurchase the Loan. Compl. ¶¶ 48-49. Most recently, in its October 2015 Answer, BofA once again denied the existence of a material and adverse impact, and in fact admitted that the value of the Loan and Property were "optimized" when the Loan was sold in July 2007, Ex. 8 at ¶¶ 23, 41, 48, 53, 54, 59, 62, thereby negating any contention by BofA that the material and adverse impact element of the Trust's claim occurred at that time.[4]

In sum, BofA has failed to meet its burden of showing that the Trust's claim accrued in July 2007 when the Loan was sold, and its Motion must be denied.[5] See, e.g., Bano v. Union Carbide Corp., 361 F.3d 696, 710 (2d Cir. 2004) ("The defendant's normal burden includes showing when the cause of action accrued."); Santo B. v. Roman Catholic Archdiocese of N.Y.,

---

[4] Since BofA admits that not all of the elements of the Trust's claims even exist for the statute of limitations to begin to run, BofA's Motion should be denied for this additional reason.

[5] At a minimum, BofA's Motion should be denied so that discovery may go forward on when the Trust sustained a material and adverse impact on account of BofA's breach of MLPA representation 8. See Davis v. Bryan, 810 F.2d 42, 45 (2d Cir. 1987) (finding the district court "erroneously granted" the defendants summary judgment because "an issue of material fact exist[ed] as to when then statute of limitations actually began to run"); Bice v. Robb, 324 F. App'x 79, 81 (2d Cir. 2009) (reversing and remanding because the question of whether the statute of limitations had run "turns on a number of unresolved issues of fact that would benefit from discovery."); D'Antonio, 2008 WL 582354, at *9 (refusing to dismiss one of the contract claims based on statute of limitations because defendant's contention that breach occurred at a particular point in time was not evident from the facts alleged in the complaint); G.W. White & Son, Inc. v. Tripp, 1995 WL 65058, at *3 (N.D.N.Y. Feb. 14, 1995) ("Absent undisputed allegations, affidavits, and/or admissions, the question of when an improvement or project was completed so as to commence the running of the statute of limitations is one of fact to be determined at trial.").

13

51 A.D.3d 956, 957 (N.Y. App. Div. 2008) (explaining that movant has the burden of demonstrating, *prima facie,* that the time within which to commence the action has expired).

II. **The Material And Adverse Impact Element Of The Trust's Claim Was Not Addressed In Any Of The Cases Cited By BofA**

The cases relied upon by BofA in its Motion – <u>ACE Sec. Corp. v. DB Structured Prods.</u>, 25 N.Y.3d 581 (2015), <u>Deutsche Bank Nat. Trust Co. v. Quicken Loans Inc.</u>, 2015 WL 7146515 (2d Cir. Nov. 16, 2015), and <u>Bank of New York Mellon v. WMC Mortgage, LLC</u>, 17 N.Y.S.3d 613, 614 (N.Y. Sup. Ct. 2015) – are inapposite because none address the material and adverse effect element that is an element of the Trust's claim.

This case is distinguishable from <u>ACE</u>, <u>Quicken Loans</u>, and <u>Bank of New York Mellon</u> because in those cases everyone agreed that all of the elements of the plaintiff's claim existed when the loans were sold to the trust.[6] Here, as noted above, the Trust alleged that the material and adverse impact occurred in 2012 when the Surgery Center vacated the Property, and BofA admitted that there was no material and adverse impact when the Loan was sold into the Trust in July 2007. Accordingly, the Trust could not pursue its remedy against BofA for its breach of contract in July 2007. It was only when the material and adverse condition was satisfied that the

---

[6] In <u>ACE</u>, the plaintiff alleged that the factual representations and warranties about the borrower's income, occupancy status, and existing debt obligations caused a material and adverse effect at the same time the representations were given and the loans were sold to the residential mortgage trust in March 2006. <u>See, e.g.</u>, Ex. 1 at ¶ 30. In <u>Quicken Loans</u>, the plaintiff alleged that the factual representations and warranties about the borrower's income, debt-to-income ratio, occupancy status, and loan to value ratios caused a material and adverse effect at the same time the representations were given. <u>See, e.g.</u>, Ex. 2 at ¶¶ 40-43, 47, 50, 55. In fact, the plaintiff alleged that Quicken knew of these material breaches when it made the representations. <u>See generally</u> Ex. 2. In <u>Bank of New York Mellon</u>, the parties agreed that ***any*** breach of the relevant representation and warranty would be automatically deemed at the time of the breach to materially and adversely affect the value of the loan. <u>See</u> Ex. 3 at ¶ 53. Furthermore, the plaintiff alleged that the breaches had caused a material and adverse effect on the value of the subject loans at the time of closing and concealed the loan's risks at the time of the closing. <u>Id.</u> ¶¶ 70, 72, 74.

14

10478924

Trust's breach of contract claim began to accrue.  See Aetna Life & Cas., 67 N.Y.2d 169 at 175; John J. Kassner & Co. v. City of New York, 46 N.Y.2d at 550.  This important element of the Trust's breach of contract claim was not addressed in ACE, Quicken Loans, and Bank of New York Mellon because there, unlike here, the parties' agreed that a material adverse effect existed at closing.

## CONCLUSION

For the reasons set forth above, BofA's Motion for Judgment on the Pleadings must be denied.

Dated:  January 11, 2016                    Respectfully submitted,

/s/ Gregory A. Cross
Gregory A. Cross (*pro hac vice*)
Colleen M. Mallon (*pro hac vice*)
VENABLE LLP
750 East Pratt Street, Suite 900
Baltimore, Maryland 21202
(410) 244-7400 (telephone)
(310) 244 7742 (facsimile)

Kostas D. Katsiris
VENABLE LLP
Rockefeller Center
1270 Avenue of the Americas, 24th Floor
New York, New York 10020
(212 307-5500 (telephone)
(212) 307-5598 (facsimile)

*Attorneys for Plaintiff U.S. Bank National Association, as successor to Wells Fargo Bank, National Association, as Trustee for the Registered Holders of Citigroup Commercial Mortgage Trust 2007-C6, Commercial Mortgage Pass-Through Certificates, Series 2007-C6, acting by and through its Special Servicer CWCapital Asset Management LLC*