UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION, as successor to Wells Fargo Bank, National Association, as Trustee for the Registered Holders of Citigroup Commercial Mortgage Trust 2007-06, Commercial Mortgage Pass-Through Certificates, Series 2007-C6, acting by and through its Special Servicer CWCapital Asset Management LLC, | |
| Plaintiff, | |
| - against - | |
| BANK OF AMERICA, N.A., | |
| Defendant. | |

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: ___9/20/16___

15 Civ. 8153 (PGG)

**MEMORANDUM
OPINION & ORDER**

PAUL G. GARDEPHE, U.S.D.J.:

In this action, Plaintiff U.S. Bank National Association ("U.S. Bank") alleges

breach of contract claims against Defendant Bank of America, N.A., arising out of

representations and warranties made in connection with the sale of commercial mortgage loans.

On October 14, 2015, this case was transferred to this Court by the United States District Court

for the Southern District of Indiana.  Plaintiff has moved to re-transfer this case to the Southern

District of Indiana.  (Dkt. No. 56)  Defendant has moved for judgment on the pleadings pursuant

to Fed. R. Civ. P. 12(c).  (Dkt. No. 54)

For the reasons stated below, Plaintiff's motion for re-transfer will be denied, and

Defendant's motion for judgment on the pleadings will be granted.

## BACKGROUND

## I.     THE COMPLAINT'S FACTUAL ALLEGATIONS

In December 1999, Women's Physicians Group, LLC purchased a two-story

commercial building located at 8081 Township Line Road, Indianapolis, Indiana (the

"Property") from Galen Hospital Corporation, Inc. for $3,512,500. (Cmplt. (Dkt. No. 1) ¶¶ 9,

12)  The Property is located on the campus of the Hospital. (Id. ¶ 14)  In connection with the

acquisition of the Property, Women's Physicians Group executed a special warranty deed (the

"Deed") that contains title exceptions that run with the Property. (Id. ¶ 16)  Paragraph 1 of the

Deed contains the following use restriction:

> The Property/Real Estate may be used and occupied only for an ambulatory
> surgery center and medical offices for the private practice of medicine and for no
> other purposes without the prior written consent of "Hospital" . . . , which consent
> may be withheld in Hospital's sole discretion. . . .

(Id. ¶ 17)

Paragraph 3 of the Deed sets forth the following right of first refusal:

> If the owner of the Property/Real Estate (the "Owner") shall receive a bona fide
> offer from any third party for the purchase, acquisition or lease (for a term of
> more than fifteen (15) years) of the Property/Real Estate or any part thereof or
> interest therein, which offer the Owner desires to accept, or if Owner desire[s] to
> sell or transfer, or make a bona fide offer to sell, transfer or assign the
> Property/Real Estate or any part thereof or interest therein to a third party, Owner
> shall promptly deliver to Galen Hospital Corporation, Inc. (the "Grantor") . . . a
> written notice setting forth the full terms and conditions of the proposed
> transaction and, if available, a copy of such offer, in the case of a purchase or
> other transfer, or a copy of the proposed lease agreement, in the case of a lease or
> an assignment of any interest of Owner.  Grantor may, within 30 days after receipt
> of such notice, elect to purchase, acquire or lease the Property/Real Estate or such
> portion thereof or interest therein which is subject to any offer as described above
> (the "Offer Property") on the same terms and conditions as those set forth in such
> notice.

(Id. ¶ 18)

On April 30, 2007, LaSalle Bank National Association ("LaSalle")[1] made a $9 million commercial mortgage loan (the "Loan") to Women's Physicians Group. (Id. ¶¶ 8-9) Repayment of the Loan is secured by, among other things, a mortgage on the Property. (Id. ¶ 9)

On July 25, 2007, LaSalle sold the Loan along with other commercial mortgage loans (together, the "Series 2007-C6 Loan Pool") to Citigroup Commercial Mortgage Securities, Inc. ("Citigroup"). (Id. ¶¶ 5, 8) This sale was made pursuant to a Mortgage Loan Purchase Agreement. (Id. ¶ 5) Citigroup deposited the loans it purchased from LaSalle into a trust fund (the "Trust"), pursuant to a Pooling and Servicing Agreement. (Id. ¶¶ 6-7) Citigroup assigned all of its rights under the Mortgage Loan Purchase Agreement to the trustee for the Trust. (Id. ¶ 35) Wells Fargo Bank, N.A. was the initial trustee of the Trust, and U.S. Bank subsequently became trustee for the Trust. (Id. ¶ 10)

In the Mortgage Loan Purchase Agreement, LaSalle made representations and warranties regarding the Loan, including the following Representation No. 8:

> Each related Mortgage is a valid and enforceable first lien on the related Mortgaged Property subject only to the exceptions and limitations set forth . . . above and the following exceptions . . . covenants, conditions and restrictions, rights of way, easements and other matters of public record, none of which, individually or in the aggregate, materially and adversely interferes with the current use of the Mortgaged Property or the security intended to be provided by such Mortgage or with the Mortgagor's ability to pay its obligations under the Mortgage Loan when they become due or materially and adversely affects the value of the Mortgaged Property. . . .

(Id. ¶ 34)

In April 2012, Women's Physician Surgery Center, LLC (the "Surgery Center") – which was the Property's major tenant – vacated the Property, eight years before its lease

---

[1] Bank of America became successor to LaSalle by merger. (Id. ¶ 5)

expired. (Id. ¶ 22) After the Surgery Center vacated the Property, Women's Physicians Group's efforts to secure a new tenant proved unsuccessful. (Id. ¶ 26) In August 2012, the Loan went into default. (Id. ¶ 27) On December 13, 2012, the Trust commenced a foreclosure action against Women's Physicians Group in Indiana state court. (Id. ¶ 28)

In March 2013, the state court appointed a receiver for the Property. (Id.) The receiver was unable to secure a tenant for the Property, however, due to the use restriction in the Deed. (Id. ¶ 29) The Hospital refused to waive or modify the use restriction, despite the receiver's requests. (Id. ¶¶ 30-32)

The use restriction and the right of first refusal in the Deed are contrary to Representation No. 8 in the Mortgage Loan Purchase Agreement. (Id. ¶ 36) Accordingly, on October 18, 2013, the Trust notified Bank of America that it had violated Representation No. 8, and that the violation had materially and adversely affected the value of the Loan. (Id. ¶ 41) The Trust requested that Bank of America either cure the violation or repurchase the Loan within 90 days. (Id. ¶ 42) These are the sole remedies available to the Trust under the Mortgage Loan Purchase Agreement and the Pooling and Servicing Agreement. (Id. ¶¶ 43-46) Bank of America has refused to cure the violation or repurchase the Loan, however. (Id. ¶¶ 47-49)

## II.  PROCEDURAL HISTORY

On September 12, 2014, Plaintiff filed the Complaint in the United States District Court for the Southern District of Indiana. (Dkt. No. 1) On December 3, 2014, Defendant filed a motion to dismiss for lack of personal jurisdiction and improper venue, pursuant to Fed. R. Civ. P. 12(b)(2) and (b)(3), or, in the alternative, to transfer the action to the Southern District of New York, pursuant to 28 U.S.C. §§ 1404(a), 1406, or 1631. (Dkt. No. 23)

4

On October 14, 2015, Judge Tanya Walton Pratt of the Southern District of

Indiana granted Defendant's motion to transfer the action to the Southern District of New York,

pursuant to 28 U.S.C. § 1631, finding that the Indiana district court lacked personal jurisdiction

over Defendant. See U.S. Bank Nat. Ass'n v. Bank of Am., N.A., No. 1:14-CV-01492-TWP,

2015 WL 5971126, at \*10 (S.D. Ind. Oct. 14, 2015). Judge Pratt determined that (1) Defendant

had not waived its objection to personal jurisdiction in Indiana; and (2) the Indiana district court

did not have general or specific personal jurisdiction over Defendant. Id. at \*6, 8, 10. Judge

Pratt denied as moot Defendant's motion to dismiss. Id. at \*10.

Plaintiff has now moved to re-transfer this action to United States District Court

for the Southern District of Indiana (Dkt. No. 56), and Defendant has moved for judgment on the

pleadings pursuant to Fed. R. Civ. P. 12(c). (Dkt. No. 54)

## DISCUSSION

## I.      MOTION TO RE-TRANSER

### A.      Application of Law of the Case Doctrine to Re-Transfer Motions

"Under the 'law of the case' doctrine, 'when a court decides upon a rule of law,

that decision should continue to govern the same issues in subsequent stages in the same case.'"

Clarendon Nat. Ins. Co. v. Lan, 152 F. Supp. 2d 506, 524 (S.D.N.Y. 2001) (quoting Arizona v.

California, 460 U.S. 605, 618 (1983)). "The law of the case doctrine reflects the obvious fact

that a regime in which each and every order in a case could be subjected to attack on the ground

that it was wrongly or improvidently entered could become unworkable." Jenkins v. Sladkus,

No. 04 CIV. 1595 (LAK), 2004 WL 1238360, at \*1 (S.D.N.Y. June 3, 2004).

"Federal courts routinely apply law-of-the-case principles to transfer decisions of

coordinate courts." Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 816 (1988)

5

(citing Hayman Cash Register Co. v. Sarokin, 669 F.2d 162, 164-170 (3rd Cir. 1982); Skil Corp. v. Millers Falls Co., 541 F.2d 554, 558–559 (6th Cir. 1976); 1B J. Moore, J. Lucas, & T. Currier, Moore's Federal Practice ¶ 0.404); see Simoiu v. U.S. Marshals Serv., No. 00 CIV 7133 (DAB), 2005 WL 292749, at *3 (S.D.N.Y. Feb. 8, 2005), on reconsideration, No. 00 CIV. 7133 (DAB), 2005 WL 646099 (S.D.N.Y. Mar. 18, 2005) (same). "'Specifically, transferee courts apply the doctrine [of law of the case] when a plaintiff moves to re-transfer the action back to the original district.'" Anghel v. New York State Dep't of Educ., No. 15-cv-5914 (SJF)(SIL), 2015 WL 7302250, at *2 (E.D.N.Y. Nov. 18, 2015) (quoting Gary Friedrich Enterprises, LLC. v. Marvel Enterprises, Inc., No. 08 Civ. 01533(BSJ)(JCF), 2008 WL 4129640, at *2 (S.D.N.Y. Sept. 4, 2008)).

Moreover, the Supreme Court has stated that "the policies supporting the [law of the case] doctrine apply with even greater force to transfer decisions than to decisions of substantive law; transferee courts that feel entirely free to revisit transfer decisions of a coordinate court threaten to send litigants into a vicious circle of litigation." Christianson, 486 U.S. at 816; see AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A., 626 F.3d 699, 724 n.11 (2d Cir. 2010) ("[A]s the Supreme Court has recognized, in reasoning that we later employed, '"transferee courts that feel entirely free to revisit transfer decisions of a coordinate court threaten to send litigants into a vicious circle of litigation."'" (quoting SongByrd, Inc. v. Estate of Grossman, 206 F.3d 172, 178 n.7 (2d Cir. 2000) (quoting Christianson, 486 U.S. at 816))); Anghel, 2015 WL 7302250, at *2 ("Motions to re-transfer 'are highly disfavored under the doctrine of law of the case.'" (quoting Gorzynski v. JetBlue Airways Corp., 10 F. Supp. 3d 408, 412 (W.D.N.Y. 2014))).

6

Under law of the case principles, "courts should be loathe" to "revisit prior

decisions of . . . a coordinate court" unless there are "extraordinary circumstances such as where

the initial decision was 'clearly erroneous and would work a manifest injustice.'" Christianson,

486 U.S. at 817 (quoting Arizona, 460 U.S. at 618 n.8).  Accordingly, courts in this Circuit have

adopted a "stringent standard for retransfer," under which

> "[i]f the motion to transfer is granted and the case is transferred to another district,
> the transferee-district should accept the ruling on the transfer as the law of the
> case and should not re-transfer except under the most impelling and unusual
> circumstances or if the transfer order is manifestly erroneous."

Caribbean Wholesales & Serv. Corp. v. US JVC Corp., 1996 WL 140251, at *4 (S.D.N.Y. Mar.

27, 1996) (quoting In re Cragar Indus., Inc., 706 F.2d 503 (5th Cir. 1983)); see Washington Nat.

Life Ins. Co. of New York v. Morgan Stanley & Co. Inc., 974 F. Supp. 214, 220 (S.D.N.Y. 1997)

(in the context of a motion for retransfer, "[t]he Court may depart from the law of the case if the

previous decision is clearly erroneous.").

"[I]mpelling and unusual circumstances arise when 'unanticipatable post-transfer

events frustrate the original purpose for transfer.'"  Caribbean Wholesales & Serv. Corp., 1996

WL 140251, at *4 (citing In re Cragar, 706 F.2d at 505).  "[W]ithout compelling grounds or

special circumstances, courts in this Circuit have refused to revisit transfer orders from another

court."  Clarendon Nat. Ins. Co., 152 F. Supp. 2d at 525 (citing Washington Nat. Life Ins. Co. of

New York, 974 F. Supp. at 219-220; Herskowitz v. Charney, 1994 WL 150812, at *2 (S.D.N.Y.

April 18, 1994); Repp v. Webber, 142 F.R.D. 398, 400-01 (S.D.N.Y. 1992); Dresser Indus., Inc.

v. First Travel Corp., 1990 WL 159037, at *3-4 (W.D.N.Y. Oct. 11, 1990)); see Washington Nat.

Life Ins. Co. of New York, 974 F. Supp. at 219 ("absent special circumstances, courts in this

Circuit have refused to revisit transfer orders from another court"; collecting cases).

7

The Supreme Court has cautioned that "a perpetual game of jurisdictional ping-pong" in which "the litigants are bandied back and forth helplessly between two courts, each of which insists the other has jurisdiction" is "exasperating for the litigants" and "wasteful for all concerned[]." Christianson, 486 U.S. at 818. While the Supreme Court acknowledged that "[s]ituations might arise . . . in which the transferee court considers the transfer 'clearly erroneous'" (id. at 819 (quoting Arizona, 460 U.S. at 618 n.8), it indicated that motions to re-transfer are to be rarely granted:

> [Because] "[t]he doctrine of the law of the case is . . . a heavy deterrent to vacillation on arguable issues," 1B J. Moore, J. Lucas, & T. Currier, Moore's Federal Practice ¶ 0.404[1], such reversals should necessarily be exceptional; courts will rarely transfer cases over which they have clear jurisdiction, and close questions, by definition, never have clearly correct answers. Under law-of-the-case principles, if the transferee court can find the transfer decision plausible, its jurisdictional inquiry is at an end. See Fogel v. Chestnutt, 668 F.2d 100, 109 (2nd Cir. 1981). . . .

Id. at 819.

## B.    Plaintiff's Personal Jurisdiction Arguments

Plaintiff contends that Judge Pratt erred in finding that (1) Defendant did not "waive[] its right to dispute personal jurisdiction by designating its local agent for service of process with the State of Indiana"; and (2) the Southern District of Indiana did not have general or specific personal jurisdiction over Defendant.[2] (Pltf. Br. (Dkt. No. 57) at 6, 21, 24, 27)[3] Plaintiff further contends that Judge Pratt's "clearly erroneous transfer will work a manifest injustice" to Plaintiff. (Id. at 6)

---

[2] Plaintiff does not argue that any "'unanticipatable post-transfer events [have] frustrate[d] the original purpose for transfer.'" Caribbean Wholesales & Serv. Corp., 1996 WL 140251, at *4 (quoting In re Cragar, 706 F.2d at 505).
[3] The page numbers of documents referenced in this Order correspond to the page numbers designated by this District's Electronic Case Filing system.

8

## 1. Applicable Law

"'A federal district court presiding over a diversity action must look to the forum state's general jurisdiction statute or long-arm statute to determine whether personal jurisdiction exists over a nonresident defendant.'" V Cars, LLC v. Israel Corp., 902 F. Supp. 2d 349, 359 (S.D.N.Y. 2012) (quoting Benson and Assocs., Inc. v. Orthopedic Network of New Jersey, No. 98 Civ. 1020(LMM), 1998 WL 388531, at *2 (S.D.N.Y. July 13, 1998)). "The exercise of personal jurisdiction must also comport with constitutional due process principles." Id. at 360.

Because "Indiana law permits its courts to exercise jurisdiction on any basis permitted by the Constitution of the United States," NExTT Sols., LLC v. XOS Techs., Inc., 71 F. Supp. 3d 857, 860 (N.D. Ind. 2014), "the statutory question merges with the constitutional one" (id.), and the issue of whether personal jurisdiction exists turns on "constitutional constraints . . . imposed by the Due Process Clause of the Fourteenth Amendment." Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 673 F.3d 50, 60 (2d Cir. 2012) (citation omitted).

"The constitutional analysis under the Due Process Clause consists of two separate components: the 'minimum contacts' inquiry and the 'reasonableness' inquiry." (Id.) "The 'minimum contacts' inquiry requires us to consider 'whether the defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction.'" Id. (quoting Chloe v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 164 (2d Cir. 2010)). "The 'reasonableness' inquiry requires us to decide 'whether the assertion of personal jurisdiction comports with "traditional notions of fair play and substantial justice" – that is, whether it is reasonable to exercise personal jurisdiction under the circumstances of the particular case.'" Id. (quoting Chloe, 616 F.at 164).

9

"[C]ontacts with the forum may confer two types of jurisdiction – specific and general." In re Parmalat Sec. Litig., 376 F. Supp. 2d 449, 453 (S.D.N.Y. 2005). "Specific jurisdiction exists when a forum 'exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum.'" Id. (quoting Metro. Life Ins. Co. v. Robertson Ceco Corp., 84 F.3d 560, 567-68 (2d Cir. 1996) (internal quotation marks and citation omitted)). General jurisdiction "'is based on the defendant's general business contacts with the forum . . . and permits a court to exercise its power in a case where the subject matter of the suit is unrelated to those contacts.'" Id. (quoting Metro. Life Ins. Co., 84 F.3d at 568). "[G]eneral jurisdiction over foreign corporations exists when those corporations' 'affiliations with the State are so "continuous and systematic" as to render them essentially at home in the forum State.'" SPV OSUS Ltd. v. UBS AG, 114 F. Supp. 3d 161, 167 (S.D.N.Y. 2015) (quoting In re Roman Catholic Diocese of Albany, New York, Inc., 745 F.3d 30, 38 (2d Cir. 2014) (per curiam) (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011)).

### 2. Waiver

Plaintiff argues that Judge Pratt erred in finding that Defendant had not waived its right to object to the exercise of personal jurisdiction in Indiana. (Pltf. Br. (Dkt. No. 57) at 19) Defendant registered to conduct business in Indiana and – in compliance with a statute requiring foreign corporations to designate an agent for service of process in order to register to do business in the State, see Ind. Code. § 23-1-49-7 – designated an agent in Indiana for service of process. (See Bank of America Registration (Dkt. No. 61-19) at 4) Plaintiff argues that by "designat[ing] [a] local agent . . . for service of process in the State of Indiana," Defendant has "waived its right to dispute personal jurisdiction." (Pltf. Br. (Dkt. No. 57) at 19 (footnotes omitted))

10

Judge Pratt rejected Plaintiff's waiver argument. U.S. Bank Nat. Ass'n, 2015 WL 5971126, at *6. Relying on Wilson v. Humphreys (Cayman) Ltd., 916 F.2d 1239 (7th Cir. 1989) and McManaway v. KBR, 695 F. Supp. 2d 883, 895 (S.D. Ind. 2010), Judge Pratt found that "registering to do business in Indiana," and "appointing an agent for purposes of service of process, does not establish personal jurisdiction over a corporation." Id. (citing Wilson, 916 F.2d at 1245; McManaway, 695 F. Supp. 2d at 895).

In Wilson, the Seventh Circuit determined that while "[r]egistering to do business [in Indiana] is a necessary precursor to engaging in business activities in [that] state . . . it cannot satisfy . . . standing alone . . . the demands of due process." Wilson, 916 F.2d at 1245. The Seventh Circuit reasoned that a contrary "interpretation of the Indiana registration statute would render it constitutionally suspect and, accordingly, . . . decline[d] to give it such a reading." Id. (citing NLRB v. Catholic Bishops of Chicago, 440 U.S. 490, 500 (1979)). Similarly, in McManaway, the district court relied on Wilson in concluding that "appoint[ing] an agent for purposes of service of process [in Indiana]" is not "sufficient to support a finding of personal jurisdiction." McManaway, 695 F. Supp. 2d at 895 (citing Wilson, 916 F.2d at 1245).

"[C]onsistent with Wilson and McManaway, [Judge Pratt] conclude[d] that Bank of America did not waive its objection to personal jurisdiction by registering to do business in Indiana and designating an agent for service of process in the State of Indiana." U.S. Bank Nat. Ass'n, 2015 WL 5971126, at *6. Plaintiff argues, however, that the Seventh Circuit's decision in Employers Ins. of Wausau v. Banco De Seguros Del Estado ("Wausau"), 199 F.3d 937 (7th Cir. 1999) demonstrates that Judge Pratt committed clear error. (Pltf. Br. (Dkt. No. 57) at 19-20)

In Wausau, Banco De Seguros Del Estado ("Banco") – a Uruguayan state bank – argued that an arbitration award against it should be vacated because Wausau's service of notice

11

of arbitration did not comply with the Foreign Sovereign Immunities Act (the "FSIA") or the terms of an underlying reinsurance contract. Wausau, 199 F.3d at 939. The case presented no issue of foreign sovereign immunity or personal jurisdiction, however, because Banco had agreed by contract (1) that "Wausau, Wisconsin [would be] the site of any arbitration," and (2) to "waive[] its immunity in any proceeding to confirm the arbitral award." (Id. at 941) The issue, instead, was whether Banco had "waived its right to notice reasonably calculated to apprise it of the pending arbitration." (Id. at 943)

Banco and Wausau had entered into a series of contracts containing "Service of Suit" clauses providing that,

> in any suit filed to recover any amount of money due under the [contracts at issue,] the Mendes & Mount and the Wisconsin Commissioner of Insurance may be served as Banco's agents for service of process. Wausau argue[d] that by designating special agents for the service of process Banco ha[d] waived its right to notice reasonably calculated to apprise it of the pending arbitration.

(Id. at 942-43)

Preliminary to considering this issue, the Seventh Circuit noted that generally, in order to exercise personal jurisdiction over a foreign corporation, a court must find that "the company has 'purposefully avail[ed] itself of the privilege of conducting activities within the forum State.'" (Id. at 943 (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)). The court acknowledged, however, that a party can choose to waive potential objections to the exercise of personal jurisdiction by "contract[ing] around minimum contacts requirements." (Id. (citing RAR, Inc. v. Turner Diesel, Ltd., 107 F.3d 1272, 1280 (7th Cir. 1997) (holding that, because personal jurisdiction is waiveable, parties can contract around minimum contacts requirement)). The court further noted that, "by agreeing [in the contracts at issue] to designate an agent for service of process, as Banco has, foreign companies can waive this requirement of 'minimum

12

contacts.'" (Id.) The court went on to find, however, "that Banco's designation of an agent for service of process did not constitute a waiver of its right to notice reasonably calculated to allow it to be heard." (Id.)

Judge Pratt considered Wausau but concluded that it does not support Plaintiff's waiver argument. U.S. Bank Nat. Ass'n, 2015 WL 5971126, at *6. This Court finds no clear error in that determination.

Wausau has no bearing on the personal jurisdiction issue here, because – as Judge Pratt noted – Banco had agreed by contract to subject itself to personal jurisdiction in Wisconsin. Given that personal jurisdiction is waiveable, and having agreed to "contract around minimum contacts requirements," Banco was in no position to dispute personal jurisdiction.

There is no such contract here. Instead, Defendant merely selected an agent for service of process in Indiana in order to comply with the statutory requirements to register to do business in that state. Although Wausau sheds no light on whether such acts can – standing alone – provide a basis for the exercise of personal jurisdiction, the weight of authority in the Seventh Circuit demonstrates that they do not. See Wilson, 916 F.2d at 1245; Leibovitch v. Islamic Republic of Iran, No. 08 C 1939, 2016 WL 2977273, at *8 (N.D. Ill. May 19, 2016) (rejecting personal jurisdiction claim premised on defendant having appointed an agent for service of process pursuant to statutory requirements for registering to do business in Illinois; distinguishing Wausau on the grounds that "[n]otably, the defendant in that case had expressly agreed to 'submit to the jurisdiction of any Court of competent jurisdiction within the United States' . . . pursuant to [the 'Service of Suit' clauses in] a private contract; thus, the Seventh Circuit was not called to decide the effect of the state [registration] statute"); ACUITY v. Roadtec, Inc., No. 13–CV–6529, 2013 WL 6632631, at *5 (N.D. Ill. Dec. 16, 2013) (defendant

13

had registered to conduct business in Illinois and appointed an agent for service of process in that state; holding that such actions do "not automatically confer general personal jurisdiction" (citing Wilson, 916 F.2d at 1245)); McManaway, 695 F. Supp. 2d at 895; Bray v. Fresenius Med. Care Aktiengesellschaft Inc., No. 06 C 50197, 2007 WL 7366260, at *4 (N.D. Ill. Aug. 30, 2007) (finding no general jurisdiction where defendant had registered and "designat[ed] an agent for service of process"; "although registering to do business is a necessary precursor to engaging in business activities in the forum state, it cannot standing alone satisfy the demands of due process for general jurisdiction" (citing Wilson, 916 F.2d at 1245)); see also Shrum v. Big Lots Stores, Inc., No. 3:14-CV-03135-CSBDGB, 2014 WL 6888446, at *7 (C.D. Ill. Dec. 8, 2014) (finding no general jurisdiction where defendant had "an agent for service of process" in the forum state); Sullivan v. Sony Music Entm't, No. 14 CV 731, 2014 WL 5473142, at *3 (N.D. Ill. Oct. 29, 2014) (same); Rawlins v. Select Specialty Hosp. of Nw. Indiana, Inc., No. 13 C 7557, 2014 WL 1647182, at *5 (N.D. Ill. Apr. 23, 2014) (same). [4]

---

[4] In arguing that Defendant waived its right to object to the exercise of personal jurisdiction, Plaintiff also relies on R.R. Donnelley & Sons Co. v. Jet Messenger Serv., Inc., No. 03 C 7823, 2004 WL 1375402 (N.D. Ill. May 25, 2004). (See Pltf. Br. (Dkt. No. 57) at 20) In R.R. Donnelley, the court ruled that defendant had consented to personal jurisdiction by designating an agent for service of process in Illinois, as required by the Motor Carrier Act, 49 U.S.C. § 13304(a). R.R. Donnelley is not persuasive.

As an initial matter, R.R. Donnelley relies on Wausau. See R.R. Donnelley & Sons Co., 2004 WL 1375402, at *4. As discussed above, Wausau sheds no light on the issue, because the defendant in Wausau had contractually waived its right to object to the exercise of personal jurisdiction. Moreover, R.R. Donnelley is contrary to the weight of authority across the Courts of Appeal, which have generally rejected the notion that personal jurisdiction can be premised on compliance with a statute requiring designation of an agent for service of process. See Brown v. Lockheed Martin Corp., 814 F.3d 619, 623 (2d Cir. 2016) ("by registering to transact business and appointing an agent under [a] Connecticut statute[] . . . [defendant] did not consent to the . . . exercise of general jurisdiction"; "[a] [contrary] interpretation would raise constitutional concerns"); Consol. Dev. Corp. v. Sherritt, Inc., 216 F.3d 1286, 1293 (11th Cir. 2000) ("[c]ourts of appeals that have addressed this issue have rejected the argument that appointing a registered agent is sufficient to establish general personal jurisdiction over a corporation"; collecting cases);

14

In sum, Judge Pratt committed no clear error in concluding that Bank of America had not waived its right to object to the exercise of personal jurisdiction by registering to do business in Indiana and designating an agent for service of process in Indiana.

### 3.   General Personal Jurisdiction

Plaintiff argues that Judge Pratt misapplied the standard for general jurisdiction announced in Daimler AG v. Bauman, 134 S. Ct. 746 (2014), and thereby incorrectly determined that Defendant is not subject to general personal jurisdiction in Indiana. (Pltf. Br. (Dkt. No. 57) at 25-27)

In Daimler, the Supreme Court rejected the notion that general jurisdiction exists "in every State in which a corporation engages in a substantial, continuous, and systematic course of business." Daimler, 134 S. Ct. at 761 (internal quotation marks omitted) (stating that such a "formulation . . . is unacceptably grasping"). The proper inquiry as to general jurisdiction is "not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' [but] whether that corporation's 'affiliations with the State are so "continuous and systematic" as to render [it] essentially at home in the forum State.'" Id. (quoting Goodyear Dunlop Tires Operations, S.A., 564 U.S. at 919). Noting that the "exemplar bases" for general jurisdiction are the "forum where [a corporation] is incorporated or has its principal place of business," the Supreme Court instructed that "a corporation's operations in a

---

Wenche Siemer v. Learjet Acquisition Corp., 966 F.2d 179, 183 (5th Cir. 1992) ("the mere act of registering an agent [pursuant to the Texas registration statute for foreign corporations] . . . does not act as consent to be hauled into Texas courts on any dispute with any party anywhere concerning any matter"); Sandstrom v. ChemLawn Corp., 904 F.2d 83, 89 (1st Cir. 1990) (no personal jurisdiction where defendant had "appointed an agent for service of process" pursuant to a Maine registration statute for foreign corporations); Ratliff v. Cooper Labs., Inc., 444 F.2d 745, 748 (4th Cir. 1971) (no personal jurisdiction where defendant had "appoint[ed] . . . an agent for service to fulfill a state law requirement").

15

forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State" only "in an exceptional case." Id. at 761 & n.19.

In the wake of Daimler, the Second Circuit has acknowledged that a plaintiff not asserting the "exemplar bases" for general jurisdiction "bears a heavy burden [in] assert[ing] that [defendant's] presence in [the forum state] presents such an 'exceptional' case" as to justify the exercise of general personal jurisdiction. Brown v. Lockheed Martin Corp., 814 F.3d 619, 627 (2d Cir. 2016); see Hood v. Ascent Med. Corp., No. 13CV0628 (RWS) (DF), 2016 WL 1366920, at *8 (S.D.N.Y. Mar. 3, 2016) ("[i]n the recent cases of Daimler and Goodyear, the Supreme Court made clear that the constitutional standard for finding a corporation to be 'essentially at home' in a foreign jurisdiction is a stringent one" (quoting Daimler, 134 S. Ct. at 760)). After Daimler, "except in a truly 'exceptional' case, a corporate defendant may be treated as 'essentially at home' only where it is incorporated or maintains its principal place of business – the 'paradigm' cases." Brown, 814 F.3d at 627; see Sonera Holding B.V. v. Cukurova Holding A.S., 750 F.3d 221, 226 (2d Cir.), cert. denied, 134 S. Ct. 2888 (2014) ("although Daimler and Goodyear 'd[o] not hold that a corporation may be subject to general jurisdiction only in a forum where it is incorporated or has its principal place of business,' those cases make clear that even a company's 'engage[ment] in a substantial, continuous, and systematic course of business' is . . . insufficient to render it at home in a forum" (quoting Daimler, 134 S. Ct. at 760)).[5]

---

[5] The Seventh Circuit's analysis and application of Daimler is fully consistent with that of the Second Circuit. See Brown, 814 F.3d at 627 (noting that the Seventh Circuit is among "our sister circuits [that] have agreed with [our] reading of Daimler" (citing Kipp v. Ski Enter. Corp. of Wis., 783 F.3d 695, 698 (7th Cir. 2015))). The Seventh Circuit has cautioned that "[i]n recent years, the Supreme Court has . . . raised the bar for [general personal] jurisdiction . . . emphasiz[ing] that it should not lightly be found." Kipp, 783 F.3d at 698. "Thus far, the [Supreme] Court has identified only two places where that condition will be met: the state of the

Here, Judge Pratt acknowledged that Plaintiff had "submitted sufficient evidence

to establish that Bank of America does business in Indiana and that such business may even be

considered 'continuous and system[at]ic.'"[6] U.S. Bank Nat. Ass'n, 2015 WL 5971126, at *8.

Judge Pratt found, "[h]owever, [that] since Goodyear and Daimler, these 'continuous and

system[at]ic' contacts are no longer sufficient to establish general jurisdiction." Id. Judge Pratt

concluded that Plaintiff's "evidence does not demonstrate the 'exceptional case' wherein a

corporation can be found to be essentially at home outside the state of its incorporation, in this

case North Carolina." Id.

This Court finds no clear error in Judge Pratt's determination that Defendant's

business activities in Indiana are, under Daimler, insufficient to provide a basis for the exercise

of general personal jurisdiction in Indiana. Although Plaintiff made a showing of substantial

business activity in Indiana, see U.S. Bank Nat. Ass'n, 2015 WL 5971126, at *8, that type of

---

corporation's principal place of business and the state of its incorporation." Id. "Any additional
candidates would have to meet the stringent criteria laid out in Goodyear and Daimler," which
"require more than the 'substantial, continuous, and systematic course of business' that was once
thought to suffice." Id. (citing Daimler, 134 S. Ct. at 760-61; Goodyear Dunlop Tires
Operations, S.A., 564 U.S. at 919)); see also NExTT Sols., LLC, 71 F. Supp. 3d at 862 ("After
Goodyear was decided in 2011, courts in this circuit have rarely found general jurisdiction to
exist."); Hayward v. Taylor Truck Line, Inc., No. 15-CV-00866, 2015 WL 5444787, at *4 (N.D.
Ill. Sept. 14, 2015) ("[a]s instructed by the Seventh Circuit, general jurisdiction 'should not
lightly be found' and 'exists only when the organization is "essentially at home" in the forum
state." (quoting Kipp, 783 F.3d at 698 (internal citations omitted))); Eli Lilly & Co. v. Mylan
Pharm., Inc., 96 F. Supp. 3d 824, 830 (S.D. Ind. 2015) ("[T]he Supreme Court's decision in
Daimler has altered the general jurisdiction analysis such that . . . a history of . . . substantial
past sales and revenue generated in the forum[] in most cases are no longer sufficient without
more to support an exercise of general jurisdiction." (citing Daimler, 134 S. Ct. at 761-62)).
[6] Plaintiff offered evidence of the following activities in Indiana: "maintaining ten Merrill
Lynch offices, operating at the University of Notre Dame, offering online banking service to
Indiana account holders, owning over 2,000 properties in Indiana, originating 929 home
mortgage loans and 163 small business loans between 2009 and 2011 to Indiana residents,
recording 29,702 mortgages in Indiana between 2006 and 2015, and holding $1.25 billion in
deposits from account holders in its Indiana branches." U.S. Bank Nat. Ass'n, 2015 WL
5971126, at *8.

17

showing is no longer sufficient under Daimler to support a finding of general jurisdiction. See

Brown, 814 F.3d at 630 (finding that "Lockheed's contacts with Connecticut fall far short of the

relationship that Due Process requires, under Daimler and Goodyear, to permit the exercise of

general jurisdiction"; "undisputed facts" demonstrated that Lockheed "has had a physical

presence in [Connecticut] for over three decades," "has employed between approximately 30 and

70 workers in the state," and "derived about $160 million in revenue for its Connecticut-based

work, [on which it] paid Connecticut taxes"); Weiss v. Nat'l Westminster Bank PLC, No. 05-cv-

4622 (DLI) (MDG), 2016 WL 1305157, at *3 (E.D.N.Y. Mar. 31, 2016) ("the 'exceptional case'

[under Daimler] exists only in rare and compelling circumstances like those in Perkins v.

Benguet Consol. Mining Co., 342 U.S. 437 (1952), where a foreign corporation maintained a

surrogate headquarters in Ohio during a period of wartime occupation in its native Philippines"

(citing Daimler, 134 S. Ct. at 755-56 & nn.8, 19)); SPV OSUS Ltd., 114 F. Supp. 3d at 168 (no

general jurisdiction where financial services company "has offices in New York, conducts

substantial business here, has a registered agent here, and has been the subject of many suits in

New York courts"); In re LIBOR-Based Financial Instruments Antitrust Litig., 2015 WL

6243526, at *27 (S.D.N.Y. Oct. 20, 2015) (no general jurisdiction even though global bank

defendants maintained significant operations in the Southern District of New York); In re

Aggrenox Antitrust Litig., 94 F. Supp. 3d 224, 256 (D. Conn. 2015) ("Being 'essentially at

home' in a place is a very high bar, almost never found for corporations where they are neither

incorporated nor headquartered."); see also Kipp, 783 F.3d at 698; NExTT Sols., LLC, 71 F.

Supp. 3d at 863-64, 866 (no general jurisdiction where corporation "earned a substantial amount

of revenue from Indiana customers," "has maintained a nearly decade-long continuous

relationship" with customers in Indiana, and Indiana was between the third and ninth greatest

18

sources of revenue out of the forty-eight or forty-nine states in which the corporation conducted business).

### 4.    **Specific Personal Jurisdiction**

Plaintiff argues that Judge Pratt "clearly erred in finding that [Defendant]'s extensive . . . contacts [related to this case] failed to reach th[e] minimum threshold" for "contacts with the forum" necessary for a finding of specific personal jurisdiction. (Pltf. Br. (Dkt. No. 57) at 22)

The Seventh Circuit has instructed that "in a breach of contract case, it is only the 'dealings between the parties in regard to the disputed contract' that are relevant to minimum contacts analysis." RAR, Inc., 107 F.3d at 1278 (emphasis omitted) (quoting Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Prods. Co., 75 F.3d 147, 153 (3d Cir. 1996)). Here, Judge Pratt found that "the disputed contracts in [this] case are the [Mortgage Loan Purchase Agreement] and the [Pooling and Servicing Agreement]," and that these contracts were "negotiated, drafted, [and] entered into . . . in New York," are "governed by New York law" and "have no connections to Indiana." U.S. Bank Nat. Ass'n, 2015 WL 5971126, at *9-10. Accordingly, Judge Pratt determined that the Indiana court "does not have specific jurisdiction over Bank of America for [purposes of] this dispute." Id. at *10; see id. ("The Seventh Circuit law is clear in circumstances such as this one, that it is 'only the dealings between the parties in regard to the disputed contract that are relevant to minimum contacts analysis.'" (quoting RAR, Inc., 107 F.3d at 1278)).

Plaintiff argues that Judge Pratt's "analysis simply ignored the significant connections" between the Mortgage Loan Purchase Agreement and the State of Indiana, given that "the Property [is] located in Indianapolis, the Deed that runs with the Property was recorded

19

in Indiana and governed by Indiana law . . . and the Loan was extended to an Indiana

[b]orrower." (Pltf. Br. (Dkt. No. 57) at 23)

   In finding no basis for the exercise of specific personal jurisdiction, however,

Judge Pratt explicitly addressed Plaintiff's arguments concerning the Loan and the Deed. Judge

Pratt noted that

> in this lawsuit[] U.S. Bank is not attempting to enforce the Loan or amend the
> Deed. Instead, U.S. Bank is suing Bank of America for breach of a contract
> warranty made pursuant to the [Mortgage Loan Purchase Agreement], and is
> attempting to enforce the cure or repurchase remedies in both the [Mortgage Loan
> Purchase Agreement] and [Pooling and Servicing Agreement].

U.S. Bank Nat. Ass'n, 2015 WL 5971126, at \*9; see id. at \*10 ("U.S. Bank's claim is based

solely in the language of the [Mortgage Loan Purchase Agreement] . . . [and] U.S. Bank's

requested remedies are founded exclusively upon the terms of the [Mortgage Loan Purchase

Agreement] and the [Pooling and Servicing Agreement]").[7]

   Judge Pratt's analysis and determination is in accord with the Seventh Circuit's

teaching in RAR, Inc., in which that court stated that it is the "dealings between the parties in

regard to the disputed contract" that are relevant to the specific personal jurisdiction analysis in a

breach of contract action. See RAR, Inc., 107 F.3d at 1278. This Court finds no clear error in

Judge Pratt's determination that the Indiana court lacked specific personal jurisdiction over

Defendant. See Hatteras Enterprises Inc. v. Forsythe Cosmetic Grp., Ltd, No. 15-cv-5887

---

[7] Although Plaintiff now argues that "the [Mortgage Loan Purchase Agreement] is not in
dispute" (Pltf. Br. (Dkt. No. 57) at 25) – as discussed above – Plaintiff's breach claim is
premised on Defendant's alleged violation of Representation No. 8 of the Mortgage Loan
Purchase Agreement. (See Cmplt. (Dkt. No. 1) ¶¶ 36, 41; see also Pltf. Br. (Dkt. No. 57) at 23
(the "[Mortgage Loan Purchase Agreement], including Representation 8, . . . is at issue here");
Oct. 22, 2015 Pltf. Ltr. (Dkt. No. 43) at 2 (referring to the "mortgage loan purchase agreement"
as "[t]he contract at issue")) In sum, Plaintiff has repeatedly acknowledged that the Mortgage
Loan Purchase Agreement is at the heart of the instant action.

(ADS)(ARL), 2016 WL 4083386, at \*8 (E.D.N.Y. July 30, 2016) (denying motion to re-transfer

where "Plaintiffs made this same argument in opposition to the Defendants' original motion to

transfer this case[,] . . . [the transferring judge] considered and rejected it," and plaintiffs do not

"point to any controlling authority or data that [the transferring judge] overlooked" (citing

Washington Nat. Life Ins. Co. of New York, 974 F. Supp. at 221)).

## C.    Obligation to Consider Section 1404(a) Factors

Plaintiff argues that Judge Pratt erred in transferring this case "without first

evaluating the transfer factors under [28 U.S.C. §] 1404(a)." (Pltf. Br. (Dkt. No. 57) at 27)

Judge Pratt ruled, however, that the Southern District of Indiana did "not have

personal jurisdiction over Bank of America," and that accordingly "the Court transfers this case

to the Southern District of New York, pursuant to 28 U.S.C. 1631." U.S. Bank Nat. Ass'n, 2015

WL 5971126, at \*10.

Section 1631 permits transfer where the transferring court lacks jurisdiction "'if

[the transfer] is in the interests of justice.'" Phillips v. Seiter, 173 F.3d 609, 610 (7th Cir. 1999)

(quoting 28 U.S.C. § 1631); see id. ("Since the term 'interests of justice' is vague, district courts

have a good deal of discretion in deciding whether to transfer a case." (citing Gunn v. United

States Dept. of Agriculture, 118 F.3d 1233, 1240 (8th Cir. 1997); Afifi v. United States Dept. of

Interior, 924 F.2d 61, 64 (4th Cir.1991); Miller v. Hambrick, 905 F.2d 259, 262 (9th Cir. 1990))).

Here, Judge Pratt found that "the transfer will serve the interest of justice." U.S. Bank Nat.

Ass'n, 2015 WL 5971126, at \*10.

Having transferred this case pursuant to Section 1631, Judge Pratt had no

obligation to analyze the Section 1404(a) factors.[8]

*     *     *     *

Plaintiff has not met its "heavy burden" to show that Judge Pratt's transfer

decision should be disturbed. See Hatteras Enterprises Inc., 2016 WL 4083386, at *10 (where

"Plaintiffs have not met their heavy burden of showing that the [transfer order] was clearly

erroneous or resulted in a manifest injustice[,] . . . the Court adheres to the [transfer order] under

the law of the case doctrine."). Accordingly, Plaintiff's motion to re-transfer this case to the

Southern District of Indiana will be denied. See Gorzynski, 10 F. Supp. 3d at 415 (denying

motion to re-transfer where "Plaintiff . . . cannot establish that the transfer order was manifestly

erroneous"); Jenkins, 2004 WL 1238360, at *1 (denying motion to re-transfer where "[t]he Court

sees no clear error [in the transfer decision] and it is not persuaded that [denying the motion

would cause any] manifest injustice [to] occur"); Washington Nat. Life Ins. Co. of New York,

---

[8] Plaintiff also argues that the Indiana court's transfer "will work a manifest injustice." (Pltf. Br. (Dkt. No. 57) at 6) "[W]hereas in the [Southern District of Indiana], Indiana's ten-year statute of limitations applies to [Plaintiff's] claims," Plaintiff's claims may be "untimely under New York's six year statute of limitations." (Id. at 6-7; see also Mar. 24, 2016 Pltf. Ltr. (Dkt. No. 71) at 1 ("[s]hould this Court decide to keep the action in the Southern District of New York, it will . . . certainly be dismissed based on New York's statute of limitations despite being properly and timely filed in Indiana"; arguing that denying re-transfer would "work a manifest injustice on [Plaintiff]").

Defendant contends, however, that "there can be no 'injustice' in having Plaintiff litigate its claims in this district, where Plaintiff should have filed its action originally." (Def. Br. (Dkt. No. 59) at 14)

This Court concludes that there is no manifest injustice in denying Plaintiff's motion to re-transfer. Whether or not Plaintiff's claims are time-barred in New York, the Indiana court lacked personal jurisdiction over the Defendant. See SongByrd, Inc., 206 F.3d at 180, 183 (affirming denial of plaintiff's motion to re-transfer case to Louisiana, even though plaintiff's claim was time-barred under New York statute of limitations).

22

974 F. Supp. at 221 (denying motion to re-transfer where plaintiffs did not establish that the transfer decision was clearly erroneous or "entirely unsupported by the facts"); Repp, 142 F.R.D. at 403 (denying motion to re-transfer where "there does not appear to be any manifest error in the reasoning of the [transferring court's] decision"); see also Washington Nat. Life Ins. Co. of New York, 974 F. Supp. at 219 ("absent special circumstances, courts in this Circuit have refused to revisit transfer orders from another court").

## II.    MOTION FOR JUDGMENT ON THE PLEADINGS

### A.    Legal Standard

"The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim." Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006). To prevail on such a motion, "the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

### B.    Analysis

Defendant argues that "Plaintiff's action is barred by New York's six-year statute of limitations [for breach of contract claims]." (Def. Br. (Dkt. No. 55) at 5)

"If a district court receives a case pursuant to a transfer under . . . 28 U.S.C.    § 1631, for want of jurisdiction, it logically applies the law of the state in which it sits, since the original venue, with its governing laws, was never a proper option." Gerena v. Korb, 617 F.3d 197, 204 (2d Cir. 2010) (citing Schaeffer v. Village of Ossining, 58 F.3d 48, 50 (2d Cir. 1995)). "Where jurisdiction rests upon diversity of citizenship, a federal court sitting in New York must apply the New York . . . statutes of limitations." Stuart v. Am. Cyanamid Co., 158 F.3d 622, 626

23

(2d Cir. 1998) (citing <u>Guaranty Trust Co. v. York</u>, 326 U.S. 99, 108-09 (1945)). "Under New York law, breach of contract claims are subject to a six year statute of limitations." <u>Lehman XS Trust, Series 2006-4N ex rel. U.S. Bank Nat. Ass'n v. Greenpoint Mortgage Funding, Inc.</u>, 991 F. Supp. 2d 472, 476 (S.D.N.Y. 2014), <u>aff'd sub nom.</u> <u>Lehman XS Trust, Series 2006-4N, ex rel. U.S. Bank Nat. Ass'n v. Greenpoint Mortgage Funding, Inc.</u>, 643 F. App'x 14 (2d Cir. 2016) (citing CPLR § 214(3)).

In <u>ACE Sec. Corp. v. DB Structured Prod., Inc.</u>, 25 N.Y.3d 581 (2015), the New York Court of Appeals addressed when claims accrue in a breach of contract action where, as here, plaintiff alleges that certain mortgage loans did not comply with representations and warranties made in a mortgage loan purchase agreement. <u>Id.</u> at 591. The Court of Appeals "h[eld] that the [plaintiff]'s cause of action against [defendant] for breach of representations and warranties accrued at the point of contract execution" – in other words, on the date that the mortgage loan purchase agreement was executed. <u>Id.</u> at 589-90; <u>see</u> <u>id.</u> at 599 ("the [plaintiff's] claim, subject to the six-year statute of limitations for breach-of-contract actions, accrued on [the date] when the [mortgage loan purchase agreement] was executed").

In reaching this decision, the Court of Appeals rejected the argument that plaintiff's "claim did not arise until [defendant] refused to cure or repurchase [the loans]" – which, as here, were the sole remedies under the mortgage loan purchase agreement at issue. <u>Id.</u> at 590, 594. The court determined that the "cure or repurchase obligation" was not "a distinct and continuing obligation that [defendant] breached each time it refused to cure or repurchase a non-conforming loan." <u>Id.</u> at 594. The court further found that "the cure or repurchase obligation" was not "a substantive condition precedent to suit that delayed accrual of the cause of action"; rather, "[the defendant] breached the representations and warranties in the parties'

24

agreement, if at all, the moment the [mortgage loan purchase agreement] was executed." Id. at 597-98.

In Deutsche Bank Nat. Trust Co. v. Quicken Loans Inc., 810 F.3d 861 (2d Cir. 2015), the Second Circuit relied on ACE Sec. Corp. to find that "[a] cause of action for breach of contractual representations and warranties" made in a mortgage loan purchase agreement accrues "at the time of execution" of the agreement. Deutsche Bank Nat. Trust Co., 810 F.3d at 865, 869 (citing ACE Sec. Corp., 25 N.Y.3d at 595-97); see Bank of New York Mellon v. WMC Mortgage, LLC, 17 N.Y.S.3d 613, 617 (N.Y. Sup. 2015) (same).

Here, Plaintiff filed this action in the Southern District of Indiana on September 12, 2014. (Dkt. No. 1)  Because this case was transferred "pursuant to 28 U.S.C. 1631," U.S. Bank Nat. Ass'n, 2015 WL 5971126, at *10, it is as if the case was filed in this District that same day. See 28 U.S.C. § 1631 (once a case is transferred to cure want of jurisdiction, "the action . . . shall proceed as if it had been filed in . . . the court to which it was transferred . . . on the date upon which it was actually filed in . . . the court from which it was transferred").

The Mortgage Loan Purchase Agreement was executed on July 25, 2007 (Cmplt. (Dkt. No. 1) ¶ 5), and the Pooling and Servicing Agreement was executed on July 1, 2007. (Id. ¶ 7)  Under the Court of Appeal's decision in ACE Sec. Corp. and the Second Circuit's decision in Deutsche Bank Nat. Trust Co., Plaintiff's breach of contract claims accrued in July 2007 and expired in July 2013, more than thirteen months before this action was filed on September 12, 2014. Accordingly, Plaintiff's contract claims are time-barred under New York's six-year statute of limitations for breach of contract claims.

Plaintiff argues, however, that the instant case is distinguishable from ACE Sec. Corp. and Deutsche Bank Nat. Trust Co. because Defendant had "agreed to cure or repurchase

the Loan if it breached any representation and warranty that it made with regard to the Loan only after such breach materially and adversely affected the Loan's value." (Pltf. Br. (Dkt. No. 63) at 5, 18; see Cmplt. (Dkt. No. 1) ¶¶ 43-46 (under the Mortgage Loan Purchase Agreement and the Pooling and Servicing Agreement, the cure or repurchase remedies are available for "any violation of a [r]epresentation [in the Mortgage Loan Purchase Agreement] that results in a material and adverse impact to the Trust")

Plaintiff contends that it would not have been entitled to make a demand on Defendant until "the material and adverse impact occurred when the Property's major tenant vacated the Property in April 2012, eight years before its lease expired[,] and [after] efforts to find a replacement tenant failed as a result of the Use Restrictions in the Deed." (Pltf. Br. (Dkt. No. 63) at 6; see Cmplt. (Dkt. No. 1) ¶¶ 22, 29) Because this action was filed less than three years after this "material and adverse impact," Plaintiff argues that its action is timely. (Pltf. Br. (Dkt. No. 63) at 6; see id. at 16 ("contrary to [Defendant's] contention, the statute of limitations did not start to run when the Loan was sold in July 2007 because, as alleged in the Complaint, [Defendant's] breach of [the Mortgage Loan Purchase Agreement] [R]epresentation 8 had not yet materially and adversely affected the value of the Loan"))

Plaintiff's argument contradicts the Second Circuit's reasoning in two recent decisions: Wells Fargo Bank, NA v. JPMorgan Chase Bank, N.A., 643 F. App'x 44 (2d Cir. 2016) (summary order) and U.S. Bank Nat. Ass'n v. Dexia Real Estate Capital Markets, 643 F. App'x 48, 49 (2d Cir. 2016), as amended (Mar. 18, 2016) (summary order).[9]

---

[9] Acknowledging that these decisions are summary orders and thus have no precedential effect see Lebron v. Sanders, 557 F.3d 76, 77 (2d Cir. 2009) ("'Rulings by summary order do not have precedential effect.'" (quoting Local Rule 32.1)), their reasoning is nonetheless persuasive here.

In <u>Wells Fargo Bank</u>, plaintiff's "claims arose from [defendant's] alleged breach of its contractual obligations, as memorialized in the parties' Mortgage Loan Purchase Agreement . . . , to repurchase a mortgage loan that allegedly violated certain representations and warranties." <u>Wells Fargo Bank</u>, 643 F. App'x at 45-46. The Second Circuit rejected Wells Fargo's argument that – because it "was not entitled to demand that [defendant] repurchase or cure the defective loan until there was a material and adverse effect on the value of the loan as a result of the breach" – the material and adverse effect requirement "toll[ed] the statute of limitations." <u>Id.</u> at 46-47. The Second Circuit reasoned that "the language referring to material adverse effects is part of the provision through which [Plaintiff] might seek . . . recourse for a breach of representations and warranties made in the [Mortgage Loan Purchase Agreement]" and that, accordingly, "the material and adverse effect requirement is a component of the remedy and not of the breach," which "does not delay accrual." The court concluded that the requirement that any breach of the representations and warranties in the mortgage loan purchase agreement cause material and adverse effects "does not toll the statute of limitations under New York law." <u>Id.</u> at 47.

In <u>U.S. Bank Nat. Ass'n</u>, the district court ruled that claims for breach of representations and warranties made in a mortgage loan purchase agreement did not accrue at the time the agreement was executed, because the agreement stated that "a breach must 'materially and adversely affect[] the value of the affected Mortgage Loans' before [plaintiff] can demand cure and repurchase." <u>U.S. Bank Nat. Ass'n</u>, 643 F. App'x at 50. The Second Circuit reversed, finding that the requirement that the breach materially and adversely affect the value of the loan "does not create a substantive element of an actionable breach for statute of limitations purposes," and therefore "does not toll the statute of limitations under New York law." <u>Id.</u>

27

(citing ACE Sec. Corp., 25 N.Y.3d at 598). The Second Circuit reiterated that – regardless of any requirement that a breach cause a material and adverse impact – "the statute of limitations runs from the time th[e] representations and warranties were made." Id.

Based on the reasoning set forth in Wells Fargo Bank, NA and U.S. Bank Nat. Ass'n, Plaintiff's argument that the material and adverse impact requirement affects the timeliness of this action is not persuasive.

Because Plaintiff's claims are time-barred, Defendant's motion for judgment on the pleadings will be granted.

## CONCLUSION

For the reasons stated above, Plaintiff's motion to re-transfer this action to the United States District Court for the Southern District of Indiana is denied. (Dkt. No. 56) Defendant's motion for judgment on the pleadings is granted. (Dkt. No. 54)

The Clerk of the Court is directed to terminate the motions (Dkt. Nos. 54, 56) and to close this case. Any other pending motions are moot.

Dated: New York, New York
September 19, 2016

SO ORDERED.

Paul G. Gardephe
United States District Judge