UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION, as successor to Wells Fargo Bank, National Association; as Trustee for the Registered Holders of Citigroup Commercial Mortgage Trust 2007-06, Commercial Mortgage Pass-Through Certificates, Series 2007-C6; acting by and through its Special Servicer CWCapital Asset Management LLC,<br><br>                    Plaintiff,<br><br>         - against -<br><br>BANK OF AMERICA, N.A.,<br><br>                    Defendant. | **MEMORANDUM OPINION & ORDER**<br><br>15 Civ. 8153 (PGG) |

PAUL G. GARDEPHE, U.S.D.J.:

              In this action, Plaintiff U.S. Bank National Association ("U.S. Bank") alleges

breach of contract claims against Defendant Bank of America, N.A. ("Bank of America"),

arising out of representations and warranties made in connection with the sale of commercial

mortgage loans.  On October 14, 2015, this case was transferred to this District by the United

States District Court for the Southern District of Indiana.  On January 27, 2016, Plaintiff moved

to re-transfer this case to the Southern District of Indiana.  (Dkt. No. 56)  Defendant moved for

judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).  (Dkt. No. 54)

              On September 20, 2016, this Court granted Defendant's motion for judgment on

the pleadings and denied Plaintiff's motion to re-transfer the action.  (Dkt. Nos. 75, 76); see also

U.S. Bank Nat'l Ass'n v. Bank of Am. N.A., No. 15 Civ. 8153 (PGG), 2016 WL 5118298

(S.D.N.Y. Sept. 20, 2016).  In granting Defendant's motion for judgment on the pleadings, this

Court concluded that Plaintiffs' claims were time-barred under New York law.  See U.S. Bank, 2016 WL 5118298, at *13-14.  Plaintiff appealed.  (Dkt. No. 77)

On February 15, 2019, the Second Circuit affirmed this Court's denial of Plaintiff's motion to re-transfer this action to the Southern District of Indiana, but vacated this Court's order granting Defendant judgment on the pleadings.  (Dkt. No. 78); see also U.S. Bank Nat'l Ass'n v. Bank of Am. N.A., 916 F.3d 143, 152 (2d Cir. 2019). After remand from the Second Circuit,  Defendant again moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).  (Dkt. No. 88)

For the reasons stated below, Defendant's motion for judgment on the pleadings will be denied.

## BACKGROUND

## I.      THE COMPLAINT'S FACTUAL ALLEGATIONS

In December 1999, Women's Physicians Group, LLC purchased a two-story commercial building located at 8081 Township Line Road, Indianapolis, Indiana (the "Property") from Galen Hospital Corporation, Inc. for $3,512,500.  (Cmplt. (Dkt. No. 1) ¶¶ 9, 12)  The Property is located on the campus of the Hospital.  (Id. ¶ 14)  In connection with the acquisition of the Property, Women's Physicians Group executed a special warranty deed (the "Deed") that contains title exceptions that run with the Property.  (Id. ¶ 16)  Paragraph 1 of the Deed contains the following use restriction:

> The Property/Real Estate may be used and occupied only for an ambulatory surgery center and medical offices for the private practice of medicine and for no other purposes without the prior written consent of "Hospital" . . . , which consent may be withheld in Hospital's sole discretion. . . .

(Id. ¶ 17)

Paragraph 3 of the Deed sets forth the following right of first refusal:

> If the owner of the Property/Real Estate (the "Owner") shall receive a bona fide offer from any third party for the purchase, acquisition or lease (for a term of more than fifteen (15) years) of the Property/Real Estate or any part thereof or interest therein, which offer the Owner desires to accept, or if Owner desire[s] to sell or transfer, or make a bona fide offer to sell, transfer or assign the Property/Real Estate or any part thereof or interest therein to a third party, Owner shall promptly deliver to Galen Hospital Corporation, Inc. (the "Grantor") . . . a written notice setting forth the full terms and conditions of the proposed transaction and, if available, a copy of such offer, in the case of a purchase or other transfer, or a copy of the proposed lease agreement, in the case of a lease or an assignment of any interest of Owner. Grantor may, within 30 days after receipt of such notice, elect to purchase, acquire or lease the Property/Real Estate or such portion thereof or interest therein which is subject to any offer as described above (the "Offer Property") on the same terms and conditions as those set forth in such notice.

(Id. ¶ 18)

On April 30, 2007, LaSalle Bank National Association ("LaSalle") made a $9 million commercial mortgage loan (the "Loan") to Women's Physicians Group. (Id. ¶¶ 8-9) Repayment of the Loan is secured by, among other things, a mortgage on the Property. (Id. ¶ 9) Bank of America became successor to LaSalle by merger. (Id. ¶ 5 n.1) On July 25, 2007, LaSalle sold the Loan along with other commercial mortgage loans (together, the "Series 2007-C6 Loan Pool") to Citigroup Commercial Mortgage Securities, Inc. ("Citigroup"). (Id. ¶¶ 5, 8) This sale was made pursuant to a Mortgage Loan Purchase Agreement ("MLPA"). (Id. ¶ 5) The parties to the MLPA are LaSalle, as seller, and Citigroup, as purchaser. (MLPA (Dkt. No. 24-3) at 2)[1]

In the Mortgage Loan Purchase Agreement, LaSalle made representations and warranties regarding the Loan, including Representation No. 8, which reads as follows:

> Each related Mortgage is a valid and enforceable first lien on the related Mortgaged Property subject only to the exceptions and limitations set forth . . . above and the following title exceptions . . . covenants, conditions and

---

[1] Citations to page numbers of docketed materials correspond to the pagination generated by this District's Electronic Case Files ("ECF") system.

restrictions, rights of way, easements and other matters of public record, none of which, individually or in the aggregate, materially and adversely interferes with the current use of the Mortgaged Property or the security intended to be provided by such Mortgage or with the Mortgagor's ability to pay its obligations under the Mortgage Loan when they become due or materially and adversely affects the value of the Mortgaged Property. . . .

(Id. at 24; Cmplt. (Dkt. No. 1) ¶ 34)[2]

    The MLPA sets forth specific remedies available to the mortgagee in the event of a "Document Defect or a Breach" of a representation.  Section 3(c) of the MLPA provides that upon receipt of notice of a Document Defect or Breach, the seller must

cure such Document Defect or Breach . . . in all material respects, or, if such Document Defect or Breach . . . cannot be cured . . . , (i) repurchase the affected Mortgage Loan at the applicable Purchase Price . . . , or (ii) substitute a Qualified Substitute Mortgage Loan for such affected Mortgage Loan. . . .

(MLPA (Dkt. No. 24-3) § 3(c); Cmplt. (Dkt. No. 1) ¶ 43)

    Citigroup deposited the loans it purchased from LaSalle into a trust fund (the "Trust"), pursuant to a Pooling and Servicing Agreement ("PSA").  (Cmplt. (Dkt. No. 1) ¶¶ 6-7)[3] Citigroup assigned all of its rights under the MLPA to the trustee for the Trust, pursuant to Section 2.01(a) of the PSA.  (Id. ¶ 35)  The PSA describes Citigroup as the depositor, Wells Fargo Bank, N.A. ("Wells Fargo") as the trustee, and LaSalle as certificate administrator.  (PSA (Dkt. No. 24-4) at 2)  Wells Fargo was the initial trustee of the Trust, and U.S. Bank subsequently became the trustee.  (Id. ¶ 10)  The PSA "supplemented" the MLPA, and "provided

---

[2]  Although the MLPA (Dkt. No. 24-3) and PSA (Dkt. Nos. 24-4, 24-5, 24-6) are not attached as exhibits to the Complaint, both contracts are referenced throughout the Complaint (Cmplt. (Dkt. No. 1) ¶¶ 5-7, 34-35, 43-46) and are integral to U.S. Bank's claims.  Accordingly, the Court has considered the terms of the MLPA and PSA in resolving Defendant's motion for judgment on the pleadings.

[3]  The PSA is dated "as of July 1, 2007."  (Dkt. No. 24-4 at 1)  The date of the last notarized signature on the PSA is July 31, 2007.  (PSA (Dkt. No. 24-6) at 128)

that the purchaser would deposit the loans into the Trust and assign all of its rights under the

MLPA to the Trust." <u>U.S. Bank Nat'l Ass'n</u>, 916 F.3d at 147.

The PSA, like the MLPA, provides that after receiving timely notice of a

Document Defect or Breach, the seller must

> (i) cure such Document Defect or Breach, as the case may be, in accordance with Section 3 of the applicable [MLPA], (ii) repurchase the affected Trust Mortgage Loan in accordance with Section 3 of the related [MLPA], or (iii) within two (2) years of the Closing Date, substitute a Qualified Substitute Mortgage Loan for such affected Trust Mortgage Loan. . . .

(PSA (Dkt. No. 24-5) § 2.03(a); <u>see also</u> Cmplt. (Dkt. No. 1) ¶ 44)

In April 2012, Women's Physician Surgery Center, LLC (the "Surgery Center") –

which was the Property's major tenant – vacated the Property, eight years before its lease

expired.  (<u>Id.</u> ¶ 22)  After the Surgery Center vacated the Property, Women's Physicians Group's

efforts to secure a new tenant proved unsuccessful.  (<u>Id.</u> ¶ 26)  In August 2012, the Loan went

into default.  (<u>Id.</u> ¶ 27)  On December 13, 2012, the Trust commenced a foreclosure action

against Women's Physicians Group in Indiana state court.  (<u>Id.</u> ¶ 28)

In March 2013, the state court appointed a receiver for the Property.  (<u>Id.</u>)  The

receiver was unable to secure a tenant for the Property, however, due to the use restriction in the

Deed.  (<u>Id.</u> ¶ 29)  The Hospital refused to waive or modify the use restriction, despite the

receiver's requests.  (<u>Id.</u> ¶¶ 30-32)

Believing that the use restriction and the right of first refusal in the Deed are

contrary to Representation No. 8 in the MLPA, on October 18, 2013, the Trust notified Bank of

America that it had violated Representation No. 8, and that the violation had "materially and

adversely affected the value of the Loan."  (<u>Id.</u> ¶¶ 36, 41)  The Trust requested that Bank of

America either cure the violation or repurchase the Loan within 90 days.  (<u>Id.</u> ¶ 42)  These are

the sole remedies available to the Trust under the MLPA and the PSA.  (Id. ¶¶ 43-46)  Bank of America has refused to cure the violation or repurchase the Loan.  (Id. ¶¶ 47-49)

## II.   **PROCEDURAL HISTORY**

The Complaint was filed on September 12, 2014, in the United States District Court for the Southern District of Indiana.  (Dkt. No. 1)  On December 3, 2014, Defendant moved to dismiss for lack of personal jurisdiction and improper venue, pursuant to Federal Rules of Civil Procedure 12(b)(2) and (b)(3) or, in the alternative, to transfer the action to the Southern District of New York, pursuant to 28 U.S.C. §§ 1404(a), 1406, or 1631.  (Dkt. No. 23)

On October 14, 2015, Judge Tanya Walton Pratt of the Southern District of Indiana granted Defendant's motion to transfer the action to the Southern District of New York, pursuant to 28 U.S.C. § 1631, finding that the Indiana district court lacked personal jurisdiction over Defendant.  See U.S. Bank Nat'l Ass'n v. Bank of Am., N.A., No. 1:14-CV-01492-TWP, 2015 WL 5971126, at *10 (S.D. Ind. Oct. 14, 2015).  Judge Pratt determined that (1) Defendant had not waived its objection to personal jurisdiction in Indiana; and (2) the Indiana district court did not have general or specific personal jurisdiction over Defendant.  Id. at *6, 8, 10.  Judge Pratt denied as moot Defendant's motion to dismiss.  Id. at *10.

On January 27, 2016, Plaintiff moved to re-transfer this action to the United States District Court for the Southern District of Indiana (Dkt. No. 56), and Defendant moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).  (Dkt. No. 54)  On September 20, 2016, this Court denied Plaintiff's motion to re-transfer this action to the Southern District of Indiana, and granted Defendant's motion for judgment on the pleadings.  (Dkt. No. 75; see also Judgment (Dkt. No. 76))  Plaintiff filed a notice of appeal on October 21, 2016.  (Dkt. No. 77)

On February 15, 2019, the Second Circuit affirmed this Court's denial of the motion to re-transfer this action to the Southern District of Indiana, but vacated this Court's order granting Defendant judgment on the pleadings, concluding that this Court should have applied Indiana's choice of law rules in determining the timeliness of this action.  U.S. Bank Nat'l Ass'n, 916 F.3d at 154-155, 159 (2d Cir. 2019).

Although the Indiana court had ruled that Defendant was not subject to personal jurisdiction in Indiana and transferred the case to New York under 28 U.S.C. § 1631, the Second Circuit concluded that Defendant was in fact subject to personal jurisdiction in Indiana and that "the Indiana court's transfer to New York was not authorized by § 1631."  Id. at 146-47, 151-52. The Second Circuit nonetheless affirmed this Court's denial of Plaintiff's motion to re-transfer this action to Indiana, treating the transfer as one made under 28 U.S.C. § 1404(a) – "[f]or the convenience of [the] parties and witnesses, in the interest of justice" – rather than under § 1631. Id. at 153-54 & 153 n.6.

As to the law governing Defendant's statute of limitations argument, the court's opinion provides as follows:

> Transfers under § 1404(a) by a court that has jurisdiction are adjudicated in the transferee state under the law of the transferor state.  This is to avoid the unfairness of having a discretionary transfer done for convenience change the law under which the case will be decided. . . . Our disposition requires that the New York district court treat the case as one properly filed in Indiana, applying Indiana's choice of law rules to determine whether the suit was timely filed. . . . We express no view on the question whether the suit was timely filed, when that question is judged under Indiana's choice-of-law rules, as appropriate for a suit properly brought in Indiana and subsequently transferred to New York under § 1404(a).

Id. at 154-55 (emphasis omitted).

On August 22, 2019, Defendant moved again for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), arguing that New York law applies here, and that Plaintiff's claims are time-barred under New York law.  (Dkt. No. 89)

## DISCUSSION

I.   **DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

Plaintiff claims that Defendant breached Representation No. 8 and Section 3(c) of the MLPA and Section 2.03 of the PSA.  (See Cmplt. (Dkt. No. 1) ¶¶ 36, 48, 54, 62); see also U.S. Bank Nat'l Ass'n, 916 F.3d at 151-52.

Defendant contends that it is entitled to judgment on the pleadings because Plaintiff's breach of contract claim is time-barred.  (Def. Br. (Dkt. No. 89) at 8)  According to Defendant, the "two contracts governing the securitization . . . – [the MLPA and the PSA] – are expressly governed by New York law, which imposes a six-year limitations period on contract claims."  (Id.)  Defendant further maintains that (1) in the MLPA and the PSA the parties agreed that New York substantive and procedural law would apply to any disputes arising under these agreements; (2) the "purpose and commercial context [of the MLPA and the PSA also] would resolve the limitations question in favor of New York's six-year period for contract suits"; and (3) "to the extent . . . [that] it is necessary to consider the parties' transactional 'contacts' with New York and Indiana, New York has the strongest connection to the facts of this litigation and must supply the governing law."  (Id. at 8-10)

Plaintiff counters that Indiana's ten-year statute of limitations for breach of written contracts governs here, because the parties did not expressly state what procedural law would apply to their disputes.  (Pltf. Opp. (Dkt. No. 90) at 6, 28)  Plaintiff further contends that (1) the choice of law issue is governed by the MLPA, and not the PSA, and that the MLPA

requires the application of Indiana procedural law; (2) even if the PSA were relevant, Indiana procedural law would still apply; (3) industry custom and practice favors application of Indiana procedural law; and (4) Indiana's "most intimate contacts test" is irrelevant, because there is no dispute over the applicable substantive law.  (Id. at 18-28)

## II.   LEGAL STANDARDS

"The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim."  Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006).  To prevail on such a motion, "the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'"  ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

Where, as here, the parties' disputes "rest[ ] on interpretation of the . . . contract, [it] 'is a question of law.'"  Philadelphia Indem. Ins. Co. v. Streb, Inc., 487 F. Supp. 3d 174, 183-84 (S.D.N.Y. 2020) (quoting VAM Check Cashing Corp. v. Fed. Ins. Co., 699 F.3d 727, 729 (2d Cir. 2012)).  "[The Court's] role in interpreting a contract is to give effect to the intent of the parties at the time of the contract's making."  Israel v. Chabra, 601 F.3d 57, 65 n.2 (2d Cir. 2010).

## III.   RELEVANT CONTRACT PROVISIONS

As discussed above, LaSalle, to which Bank of America is the successor-by-merger, executed the MLPA on July 25, 2007.  The MLPA provides for the sale of certain loans, including the Loan, to Citigroup.  (Cmplt. (Dkt. No. 1) ¶¶ 5-8)  Pursuant to the MLPA, LaSalle made certain representations and warranties regarding the Loan to Citigroup.  (Id. ¶ 34)  Pursuant to Section 2.01(a) of the PSA, dated "as of July 1, 2007," Citigroup, as Depositor, assigned all of

its rights under the MLPA to the Trustee for the Trust.  (Id. ¶¶ 7, 35)  Wells Fargo Bank, N.A. was the initial trustee of the Trust; U.S. Bank subsequently became the trustee.  (Id. ¶ 10)

As noted above, the Complaint alleges that Defendant breached Representation No. 8 and Section 3(c) of the MLPA and Section 2.03 of the PSA.  (Cmplt. (Dkt. No. 1) at ¶¶ 36, 48, 54, 62)

As discussed below, the two contracts have different choice of law provisions.

Plaintiff now contends that the MLPA is "the relevant contract because (1) "[t]he Second Circuit recognized that the MLPA is 'the contract here in question'" in its 2019 opinion (Pltf. Opp. (Dkt. No. 90) at 18 (citing U.S. Bank Nat'l Ass'n., 916 F.3d at 152)); and (2) Defendant clearly "agree[s] that Plaintiff's claim arises out of the MLPA," as Defendant's brief states that "'Plaintiff's claims arise out of the alleged breach of a warranty representation in the 2007 MLPA. . . .'"  (Id. at 18-19 (quoting Def. Br. (Dkt. No. 89) at 8))

The Second Circuit described the "central tenets of Plaintiff's theory of liability" as follows:

> (i) Defendant breached Representation No. 8 of the MLPA that there were no restrictions on the use of the Indiana Property that would interfere with the mortgagor's ability to make its payments or adversely affect the value of the Property and (ii) Defendant failed to comply with its contractual commitment to cure the breach. . . . Plaintiff alleges that Bank of America then breached its commitments under Section 3(c) of the MLPA to either "cure such . . . Breach . . . or, if such . . . Breach . . . cannot be cured, [to] (i) repurchase the affected Mortgage Loan at the applicable Purchase Price . . . or (ii) substitute a Qualified Substitute Mortgage Loan for such affected Mortgage Loan. . . ."

U.S. Bank Nat'l Ass'n, 916 F.3d at 151-52.

Plaintiff contends that because the core of this action is "whether [Bank of America] breached Representation 8 of the MLPA," the "relevance of the PSA to this litigation is extremely limited."  (Pltf. Opp. (Dkt. No. 90) at 19)

Plaintiff is, however, not a party to the MLPA.  It is only a party to the PSA.  (See id. ("The PSA gives the Plaintiff (a non-party to the MLPA) standing on behalf of the Trust parties to bring a claim against a mortgage loan seller for breach of the MLPA."); see also PSA (Dkt. Nos. 24-4, 24-5, 24-6); MLPA (Dkt. No. 24-3))  Although the purchaser in the MLPA (Citigroup) assigned all its rights to Plaintiff in the PSA (see Cmplt. (Dkt. No. 1) ¶ 35), Plaintiff did not negotiate the MLPA – it only negotiated the terms of the PSA.  It is not plausible to contend that, when Plaintiff was negotiating the terms of the PSA, it intended that the choice of law provision in a contract to which it is not a party – the MLPA – would trump the choice of law provision in the contract that it was then negotiating.  See Israel, 601 F.3d at 65 n.2.  Accordingly, this Court will apply the PSA's choice of law provision in determining which state's procedural law governs.

## IV.   INDIANA CHOICE OF LAW RULES

The Second Circuit's decision in this case "requires that the New York district court treat the case as one properly filed in Indiana, applying Indiana's choice-of-law rules to determine whether the suit was timely filed." U.S. Bank Nat'l Ass'n, 916 F.3d at 155; see also Piper Aircraft Co. v. Reyno, 454 U.S. 235, 243 n.8 (1981) ("[W]here a case is transferred pursuant to 28 U.S.C. § 1404(a), [the transferee court] must apply the choice-of-law rules of the State from which the case was transferred." (citing Van Dusen v. Barrack, 376 U.S. 612, 639 (1964))).

"Substantive law is '[t]he part of the law that creates, defines, and regulates the rights, duties, and powers of parties.'  Procedural law is '[t]he rules that prescribe the steps for having a right or duty judicially enforced, as opposed to the law that defines the specific rights or duties themselves.'" Hedden v. CBS Corp., No. 1:13-CV-01986-TWP-TAB, 2015 WL 5775570, at *7 (S.D. Ind. Sept. 30, 2015) (internal citations omitted) (quoting Black's Law Dictionary

(10th ed. 2014)).  Indiana courts have long held that statutes of limitations are procedural, and

not substantive.  Lehman Bros. Holdings v. Laureate Realty Servs., Inc., No. 1:04-CV-1432-

RLY-TAB, 2007 WL 2904591, at *10 (S.D. Ind. Sept. 28, 2007) ("Indiana law treats statutes of

limitations as procedural, rather than substantive, and therefore not subject to choice of law

disputes." (citing McLaughlin Equip. Co. v. SerVaas, No. IP98-0127-C-T/K, 2004 WL 1629603,

at *45 (S.D. Ind. Feb. 18, 2004))); Miller v. Javitch, Block & Rathbone, LLP, 397 F. Supp. 2d

991, 1002 (N.D. Ind. 2005) ("[U]nder Indiana law, statutes of limitation are procedural, rather

than substantive, and are not subject to parties' choice of law disputes." (citations omitted));

Bailey v. Skipperliner Indus., Inc., 278 F. Supp. 2d 945, 951 (N.D. Ind. 2003) (same); Horvath v.

Davidson, 264 N.E.2d 328, 332 (Ind. Ct. App. 1970) ("Without exception the statute of

limitations has been considered procedural in Indiana." (citations omitted)); see also Kissel v.

Rosenbaum, 579 N.E.2d 1322, 1326-27 (Ind. Ct. App. 1991) (stating that a statute of limitations

is a procedural constraint).  Accordingly, unless the parties here specifically contracted to select

the procedural law of another forum, Indiana procedural law applies.

   Indiana courts apply the principle of lex fori – "law of the forum" – in addressing

procedural issues.  Brill v. Regent Commc'ns, Inc., 12 N.E.3d 299, 306 (Ind. Ct. App. 2014).

Parties may, of course, choose to be bound by the law of another forum.  Id. ("Generally, Indiana

courts will give effect to the parties' agreement as to controlling law." (citing JKL Components

Corp. v. Insul-Reps, Inc., 596 N.E.2d 945, 950 (Ind. Ct. App. 1992))).  However, "'the prevailing

authority indicates that, unless the parties expressly agree to apply the statute of limitations of

another state, general choice of law provisions in contracts incorporate only substantive law and

do not displace the procedural law of the forum state.'"  Smither v. Asset Acceptance, LLC, 919

N.E.2d 1153, 1157-58 (Ind. Ct. App. 2010) (quoting Western Video Collectors, L.P. v.

Mercantile Bank of Kansas, 935 P.2d 237, 239 (Kan. Ct. App. 1997)).  "[A] contract provision that an agreement is to be governed by the law of another state operates only to import the substantive law of that state; the procedural law of the forum state applies to procedural issues." JKL Components Corp., 596 N.E.2d at 950 (citation omitted) (holding that "while the parties . . . agreed that their contract will be construed under and governed by California law, . . . Indiana law . . . governs the procedures to be followed by the trial court").  In sum, "[b]ecause in Indiana statutes of limitations are procedural in nature, Indiana choice-of-law rules state that the statute of limitations of the forum state, Indiana, will apply."  Autocephalous Greek-Orthodox Church of Cyprus v. Goldberg & Feldman Fine Arts Inc., 717 F. Supp. 1374, 1385 (S.D. Ind. 1989) (citing Albrecht v. Ind. Harbor Belt R.R. Co., 178 F.2d 577, 578 (7th Cir. 1949); Dart Indus., Inc. v. Adell Plastics, Inc., 517 F. Supp. 9, 10 (S.D. Ind. 1980); Horvath,  264 N.E.2d 328, 332)).

There are very few Indiana decisions in which courts have concluded that parties contracted around the application of Indiana procedural law.  See, e.g., Lehman Bros. Holdings, 2007 WL 2904591, at *9-10 (holding that although the parties had agreed that their contract would be "governed by and construed in accordance with the substantive laws of the State of New York (without regard to conflicts of laws principles), and the obligations, rights and remedies of the parties hereunder shall be determined in accordance with such laws," the parties had chosen only New York substantive law, and Indiana's statute of limitations applied); Tokio Marine & Fire Ins. Co. v. Giffels Assocs., Inc., No. 3:04-CV-013-RLY/WGH, 2005 WL 2127084, at *2 (S.D. Ind. Sept. 1, 2005) ("[D]espite the Kentucky choice of law provision in the contract . . . , Indiana procedural law [– including Indiana's statute of limitations –] applies to this case.").

Brill v. Regent Communications, Inc. is the rare case in which an Indiana court following Indiana choice-of-law principles holds that the parties had in fact contracted around the application of Indiana procedural law.  The contract provisions at issue in that case state that (1) "[t]his Agreement shall be interpreted and the rights of the parties determined under the laws of the Commonwealth of Virginia without regard to the conflict of law provisions thereof"; and (2) "[t]his . . . Agreement shall be governed by and construed in accordance with the internal laws of the Commonwealth of Virginia (without regard to any conflict of law provisions thereof)."  Brill, 12 N.E.3d at 305 (quotation marks and citations omitted).  The Brill Court concluded that – in including this language –the parties had agreed that both "substantive matters [and] also the procedural matters [are to be resolved in accordance with] the law of the specified state."  Id. at 308.  The court deemed the inclusion of these phrases "to be an indication of the parties' intent."  Id.

As discussed below, neither the PSA nor the MLPA contain any such provision. Defendant nonetheless contends that this Court should apply New York procedural law, because (1) the PSA states that portfolio claims and "remedies" shall be determined in accordance with New York law; and (2) the MLPA states that it "shall be governed in accordance with the internal laws and decisions of New York," citing N.Y. General Obligations Law § 5-1401.  (Def. Br. (Dkt. No. 89) at 17-18)

## V.   CONTRACT PROVISIONS AT ISSUE

### A.   The Pooling and Servicing Agreement's Choice of Law Provision

Section 11.04 of the PSA provides as follows:

Governing Law.  This Agreement and the Certificates shall be construed in accordance with the internal laws of the State of New York applicable to agreements negotiated, made and to be performed entirely in said State, and the

obligations, rights and remedies of the parties hereunder shall be determined in accordance with such laws.

(PSA (Dkt. No. 24-6) § 11.04)

Defendant contends that "remedies" – as used in the PSA's choice of law provision – encompasses New York's statute of limitations.  Because statutes of limitation "only serve to effect the remedy. . . . [t]he plain terms of both the MLPA and PSA . . . evidence an intent to apply all aspects of New York law to claims and remedies arising out of those contracts."  (Def. Br. (Dkt. No. 89) at 17, 19)  In support of this argument, Defendant states that "Indiana courts have long held that statutes of limitations 'generally are not considered to be substantive in nature but rather only serve to effect the remedy.'"  (Id. at 17-18 (quoting Guthrie v. Wilson, 162 N.E.2d 79, 81 (Ind. 1959) (emphasis omitted); citing DeHart v. Anderson, 383 N.E.2d 431, 435 (Ind. Ct. App. 1978); In re Hogan, 129 N.E. 633, 634 (Ind. Ct. App. 1921), overruled in part on other grounds by Zeller v. Mesker, 155 N.E. 520 (Ind. Ct. App. 1927) (en banc)))  Defendant adds that "[t]he PSA confirms [the] conclusion [that the New York statute of limitations applies, because it] requir[es] the contracts to be construed as if they were performed 'entirely in' New York. . . ."  (Id. at 9)

Black's Law Dictionary defines "remedy" as "[t]he means of enforcing a right or preventing or redressing a wrong; legal or equitable relief."  Remedy, Black's Law Dictionary (11th ed. 2019).  Given that a statute of limitations is "[a] law that bars claims after a specified period," Statute of Limitations, Black's Law Dictionary (11th ed. 2019), statutes of limitations do not meet this definition.  In short, a statute of limitations is not a remedy; it is instead a procedural barrier to potentially obtaining a remedy.  Sun Oil Co. v. Wortman, 486 U.S. 717, 725 (1988) (a statute of limitations "does not extinguish the underlying right but merely causes the remedy to be withheld"); F.D.I.C. v. J.P. Morgan Acceptance Corp. I, 958 F. Supp. 2d 1002,

1006 n.1 (S.D. Ind. 2013) ("A statute of limitations requires a lawsuit to be filed within a specified period of time after a legal right has been violated, and is procedural, barring only the remedy."); see also Hinkle by Hinkle v. Henderson, 85 F.3d 298, 301 (7th Cir. 1996) ("This Court has stated that statutes of limitations are procedural, barring only the remedy, while statutes of repose are substantive, extinguishing the right to bring a cause of action." (emphasis in original) (citing Boggs v. Adams, 45 F.3d 1056, 1060 (7th Cir. 1995)).

The fact that statutes of limitation are pleaded as an affirmative defense further demonstrates that they are not remedies.  See Vergara v. City of Chicago, 939 F.3d 882, 886 (7th Cir. 2019) ("A motion to dismiss based on failure to comply with the statute of limitations should be granted only where the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense." (citation, quotation marks, and alteration marks omitted)); Chicago Bldg. Design, P.C. v. Mongolian House, Inc., 770 F.3d 610, 613 (7th Cir. 2014) ("'[T]he statute of limitations is an affirmative defense.'" (quoting United States v. N. Trust Co., 372 F.3d 886, 888 (7th Cir.2004))).  In sum, statutes of limitations fix the time period within which a remedy may be sought; they do not provide the remedy itself.

The cases Defendant cites – Guthrie, DeHart, and Hogan – are not to the contrary. Guthrie is a medical malpractice case that addresses statutory changes affecting a statute of limitations, and whether the altered period of limitations could be retroactively applied to bar a claim.  Guthrie, 162 N.E.2d at 82.  DeHart is a personal injury automobile accident case that likewise addresses a change to the statute of limitations, and whether that change could be applied retroactively.  DeHart v. Anderson, 383 N.E.2d at 435.  The instant case does not involve any alleged change to a statute of limitations.  Finally, the statement in Hogan that statutes of limitations "neither create nor destroy rights, but pertain to the remedy solely," does not

16

demonstrate that a statute of limitations is a remedy, much less that use of the term "remedies" in a choice of law demonstrates the parties' intent to select a particular state's procedural law.  See In re Hogan, 129 N.E. at 634.

Applying Indiana's choice of law principles, this Court concludes that neither the reference to "remedies" in the PSA nor any other language in the PSA's choice of law provision demonstrates that the parties agreed that New York procedural law would apply to disputes arising under the PSA.

### B.   The Mortgage Loan Purchase Agreement's Choice of Law Provision

Section 13 of the MLPA provides as follows:

Governing Law.  This agreement and the rights, duties, obligations and responsibilities of the parties hereto shall be governed in accordance with the internal laws and decisions of New York.  The parties hereto intend that the provisions of Section 5-1401 of the New York General Obligations Law shall apply to this agreement.

(MLPA (Dkt. No. 24-3) § 13)

Section 5-1401 of the New York General Obligations Law provides as follows:

1. The parties to any contract, agreement or undertaking, contingent or otherwise, in consideration of, or relating to any obligation arising out of a transaction covering in the aggregate not less than two hundred fifty thousand dollars, including a transaction otherwise covered by subsection (a) of section 1-301 of the uniform commercial code, may agree that the law of this state shall govern their rights and duties in whole or in part, whether or not such contract, agreement or undertaking bears a reasonable relation to this state.  This section shall not apply to any contract, agreement or undertaking (a) for labor or personal services, (b) relating to any transaction for personal, family or household services, or (c) to the extent provided to the contrary in subsection (c) of section 1-301 of the uniform commercial code.

2. Nothing contained in this section shall be construed to limit or deny the enforcement of any provision respecting choice of law in any other contract, agreement or undertaking.

N.Y. Gen. Oblig. Law § 5-1401 (McKinney 2018) (emphasis added).

As discussed above, this Court has concluded that the PSA is the governing contract. However, even if this Court were to conclude that the MLPA governs, the Court would not find – under Indiana's choice of law rules – that in the MLPA the parties contracted around application of Indiana procedural law, including Indiana statutes of limitations.

In stating that the "rights, duties, obligations, and responsibilities of the parties . . . shall be governed in accordance with the internal laws and decisions of New York," the parties do not – under Indiana's choice of law rules – displace Indiana procedural law and elect New York procedural law. And the citation to Section 5-1401 of the New York General Obligations Law does not change the outcome. Parties who elect to be governed by Section 5-1401 agree that their contract will be interpreted in accordance with New York substantive law. See VFS Fin., Inc. v. Elias-Savion-Fox LLC, 73 F. Supp. 3d 329, 337 (S.D.N.Y. 2014) ("As the New York Court of Appeals has explained, the goal of the New York State legislature in enacting this law 'was to promote and preserve New York's status as a commercial center and to maintain predictability for the parties'; accordingly, where the statute's requirements are met, courts are to apply New York substantive law rather than undertake an 'interest analysis' assessing the relative interests of competing states." (citation omitted)); Lehman Bros. Com. Corp. v. Minmetals Int'l Non-Ferrous Metals Trading Co., 179 F. Supp. 2d 118, 136-37 (S.D.N.Y. 2000) ("'Section 5-1401 is a broad choice of law provision clearly written to leave no doubt that New York substantive law applies when it is provided for in certain contracts.'" (quoting Supply & Bldg. Co. v. Estee Lauder Int'l, Inc., No. 95 Civ. 8136 (RCC), 2000 WL 223838 (S.D.N.Y. Feb. 25, 2000))); IRB-Brasil Resseguros, S.A. v. Inepar Invs., S.A., 20 N.Y.3d 310, 315 (2012) ("The plain language of General Obligations Law § 5-1401 dictates that New York substantive law

applies when parties include an ordinary New York choice-of-law provision, such as appears in the Guarantee, in their contracts.").

Accordingly, even if the MLPA's choice of law provision applied here, this Court would conclude that Indiana procedural law, including Indiana's statutes of limitations, governs the timeliness of Plaintiff's claims.

### C.   The History and Context of the MLPA and the PSA Do Not Compel Application of New York Procedural Law

Citing the multi-jurisdictional nature of mortgage securitizations, Defendant contends that the "purpose and context" of the PSA and MLPA should be considered in determining whether the parties elected New York or Indiana procedural law.  (Def. Br. (Dkt. No. 89) at 24)  "Mortgage securitizations are not only complex, but fundamentally multi-jurisdictional in nature:  they involve the pooling of hundreds of mortgage loans from nearly every state in the country.  The securitization here is a prime example:  it encompassed 318 mortgage loans secured by approximately 500 properties in 44 states."  (Id.)  Defendant contends that these circumstances mandate that this Court apply New York procedural law – the law of the forum.

This Court is bound, however, by (1) the choice of law language the parties selected; (2) the Second Circuit's direction to "apply[] Indiana's choice of law rules to determine whether the suit was timely filed," U.S. Bank Nat'l Ass'n, 916 F.3d at 155; and (3) Indiana choice of law rules stating that statutes of limitations are procedural, and that Indiana procedural law applies absent contractual language displacing Indiana procedural law in favor of the procedural law of another jurisdiction.

As discussed above, while the choice of law provisions in the PSA and the MLPA provide for the application of New York substantive law, the parties did not clearly contract

around Indiana's default application of Indiana procedural law.  Indiana law is clear that, in such circumstances, Indiana procedural law applies.  Defendant's invocation of industry practice (see Def. Reply Br. (Dkt. No. 93) at 13) cannot overcome the choice of law language the parties utilized, the Second Circuit's direction to apply Indiana choice of law rules, and the clear requirement under Indiana choice of law rules that Indiana procedural law be applied.

### D.   Indiana's Forum "Contacts" Test

Defendant contends that under Indiana's "most intimate contacts" test, this Court should apply New York procedural law.  (Def. Br. (Dkt. No. 89) at 28)  "Although the text and context of the MLPA and PSA resolve the limitations question here in favor of New York law, the result would be the same under the traditional forum contacts test Indiana courts apply in the absence of a controlling contract election."  (Id.)

Defendant's argument is not persuasive, because Indiana cases – including those Defendant cites – indicate that the "most intimate contacts" test is used to determine which substantive law should be applied.  See, e.g., Marshall v. Wellcraft Marine, Inc., 103 F. Supp. 2d 1099, 1112-13 (S.D. Ind. 1999) (applying the substantive law of Florida after finding that Florida had the "most intimate contacts" to the litigation); Kentucky Nat. Ins. Co. v. Empire Fire & Marine Ins. Co., 919 N.E.2d 565, 576-77 (Ind. Ct. App. 2010) (applying the "most intimate contacts" test and concluding that Kentucky substantive law applied); Bedle v. Kowars, 796 N.E.2d 300, 303 (Ind. Ct. App. 2003) (applying the substantive law of Ohio after finding that Ohio had the "most intimate contacts" to the litigation); Schaffert by Schaffert v. Jackson Nat. Life Ins. Co., 687 N.E.2d 230, 234 (Ind. Ct. App. 1997) (applying the "most intimate contacts" test and concluding that Illinois substantive law applied); Gen. Motors Corp. v. Northrop Corp., 685 N.E.2d 127, 135 (Ind. Ct. App. 1997) (applying the substantive law of

California to "govern the resolution of [appellants'] common law causes of action" after finding that California had the "most intimate contacts" to the litigation); <u>OVRS Acquisition Corp. v. Cmty. Health Servs., Inc.</u>, 657 N.E.2d 117, 124 (Ind. Ct. App. 1995) (applying Indiana's "most intimate contacts" choice of law rule and finding that Kentucky substantive law applied because Kentucky had the "most intimate contacts to th[e] litigation"; defendant was a Kentucky corporation, plaintiff had its principal place of business in Kentucky, and the contract was signed in Kentucky), <u>reh'g denied</u>, <u>trans. denied</u>.[4]

Defendant has not cited any case suggesting that the "most intimate contacts" test applies to the determination of which state's procedural law applies.  Instead, as discussed above, Indiana law provides that when parties have not contracted around Indiana's default application of Indiana procedural law, Indiana's procedural law governs.  Such is the case here.

## VI.    <u>APPLICATION OF INDIANA'S STATUTE OF LIMITATIONS</u>

"The question of when a cause of action accrues is generally one of law for the courts to determine."  <u>Meisenhelder v. Zipp Exp., Inc.</u>, 788 N.E.2d 924, 927 (Ind. Ct. App. 2003) (citing <u>Malachowski v. Bank One</u>, 590 N.E.2d 559, 564 (Ind. 1992)).  Here, the parties have not briefed the question of when Plaintiff's breach claim began to accrue for purposes of Indiana's statute of limitations.  (Def. Br. (Dkt. No. 89); Def. Reply Br. (Dkt. No. 93); Pltf. Opp. (Dkt. No. 90) at 25 ("The issue of when a statute of limitations began to accrue is not before the Court[.]"))

Indiana has a ten-year statute of limitations for claims for breach of written contracts.  Ind. Code Ann. § 34-11-2-11; <u>see also</u> <u>Lehman Bros. Holdings</u>, 2007 WL 2904591, at

---

[4]  In <u>Jean v. Dugan</u>, 20 F.3d 255, 261-62 (7th Cir. 1994), also cited by Defendant, the court applied the "most significant contacts" test to a tort claim.  <u>Jean</u> does not support Defendant's argument that Indiana applies a contacts-based approach in determining which state's statute of limitations applies.

*10-11 (applying Indiana's ten-year statute of limitations to a claim for breach of certain

warranties and representations contained in a mortgage loan purchase agreement).

   Here, as discussed above, the last signature on the Pooling and Servicing

Agreement was notarized on July 31, 2007 (PSA (Dkt. No. 24-6) at 128), and the Mortgage Loan

Purchase Agreement was executed on July 25, 2007.  (Cmplt. (Dkt. No. 1) ¶¶ 5, 7)  Given that

this action was filed in the Southern District of Indiana on September 12, 2014 (see Cmplt. (Dkt.

No. 1), Plaintiff's breach of contract claim is timely.

## **CONCLUSION**

   For the reasons stated above, Defendant's motion for judgment on the pleadings is

denied.  (Dkt. No. 88)  The Clerk of Court is directed to terminate the motion (Dkt. No. 88).

Dated: New York, New York
   March 31, 2021

        SO ORDERED.

        _____
        Paul G. Gardephe
        United States District Judge